# Illinois Official Reports

## Appellate Court

---

### *People v. Landa*, 2020 IL App (1st) 170851

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARLOS LANDA, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>No. 1-17-0851 |
| Filed | December 31. 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 00-CR-13454(01); the Hon. Brian Flaherty, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Sharifa Rahmany, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Justices Harris and Oden Johnson concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Carlos Landa appeals from the second-stage dismissal of his petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). On appeal, Mr. Landa argues that his case should be remanded for further second-stage proceedings. We find that Mr. Landa presented a credible sixth amendment claim in his *pro se* petition based on his trial counsel's failure to prepare and present his alibi defense and that Mr. Landa's postconviction counsel failed to provide reasonable assistance in adequately presenting this claim. We therefore reverse the dismissal of his petition and remand for further second-stage proceedings.

¶ 2                                I. BACKGROUND
¶ 3                          A. The Trial and Direct Appeal
¶ 4    Mr. Landa was charged with first degree murder and vehicular hijacking in connection with the shooting death of King Mayes on April 21, 2000. The evidence showed that, between 8 and 8:30 p.m. on that day, Mr. Mayes bought keys and key identifiers from Menards. At approximately 8:45 p.m., he drove his dark-colored Lexus from Menards to a Clark gas station in Calumet City and went into the station to purchase some items. Two witnesses, Antuan Colvin and Akbar Hendricks, testified that, as Mr. Mayes walked back to his car at the gas station, he was approached by a man who was approximately 5'5" or 5'6" and wearing dark-colored clothing, including a hoodie. The two men exchanged words, two gunshots were fired, and the two witnesses saw Mr. Mayes fall to the ground. Neither witness saw the face of the man who fired the gun, but they both saw him get into Mr. Mayes's car and drive away. Mr. Mayes later died at the hospital from a single gunshot wound to the chest.

¶ 5    Floyd Newell was charged as a codefendant in the case and testified against Mr. Landa. Mr. Newell had previously been convicted of a felony, and at the time of trial, he had two felony cases and one misdemeanor case pending against him. Mr. Newell testified that, at approximately 8:30 p.m. on April 21, 2000, he was driving his girlfriend's turquoise Grand Am with Nigel Barnes and Mr. Landa in the car. The three men stopped near the Clark gas station. All three men were in dark clothing, and both Mr. Newell and Mr. Landa were carrying guns; Mr. Newell had a black, .45-caliber handgun, and Mr. Landa had a chrome, 9-millimeter handgun.

¶ 6    According to Mr. Newell, the three men exited the car. While Mr. Newell remained by the car, Mr. Barnes and Mr. Landa went into the gas station. Mr. Newell saw Mr. Mayes exit the gas station and walk to the Lexus, then saw Mr. Mayes and Mr. Landa "exchange" words. Mr. Mayes attempted to grab Mr. Landa, and Mr. Landa shot Mr. Mayes, then fired his gun a second time as Mr. Mayes fell to the ground. Mr. Newell testified that Mr. Landa then got into the Lexus, while Mr. Newell and Mr. Barnes returned to the Grand Am, and both cars drove away from the gas station.

¶ 7    Mr. Newell testified that, later that evening, he, Mr. Barnes, and Mr. Landa parked the Lexus behind the house of Mr. Newell's uncle's girlfriend in Kankakee, Illinois, and joined three women—Laneashia Barnes, Donita Pendleton, and Mallory Burns—at the Avis Motel in Kankakee. Mr. Newell introduced the women to Mr. Landa, whom Ms. Barnes and Ms. Pendleton testified they had never met before, and according to the women, the men told the

women that they had a Lexus. According to Mr. Newell and both women, Mr. Newell and Mr. Landa were each in possession of a gun at that time. Approximately 30 minutes later, the police arrived at the motel to investigate a report of drugs being sold from one of the rooms.

¶ 8　　　Mr. Landa and Mr. Newell left the motel room before the police entered. Upon entering the motel room, the police flipped the mattress over and recovered a chrome, 9-millimeter handgun. Because the motel room was under her name, Ms. Pendleton was arrested for unlawful possession of a weapon. At trial, Mr. Newell, Ms. Pendleton, and Ms. Barnes all testified that they had seen Mr. Landa with the gun that the police found under the mattress in the hotel room.

¶ 9　　　Charles Dortch also testified for the State. He testified that he lived near the Clark gas station and heard the gunshots from his kitchen but did not see the shooting. He went to his backyard to look over the fence, which looks into the alley and separates the gas station from Mr. Dortch's house, but could not see anything and started walking down his driveway to the front of his house. As he was walking, Mr. Dortch saw two cars turn at a high rate of speed from the alley onto the street in front of his house. Approximately two or three minutes had passed since he heard the gunshots. The first car, a dark-colored Lexus with only the driver in it, was followed by a light-colored car with two people. On direct examination by the State, Mr. Dortch testified that he was unable to clearly see the faces of any of the cars' occupants.

¶ 10　　　After Mr. Dortch testified for the State, he contacted the State's Attorney's office and reported that, after he took another look at Mr. Landa when he was leaving the witness stand, he realized that Mr. Landa was clearly not the person that he saw driving the Lexus. Mr. Dortch was then recalled, in the middle of the State's case, as a defense witness. He testified that the person he saw driving the Lexus was young, small in stature, and dark-skinned; it was "[a]bsolutely not" Mr. Landa. He said that, when he had previously testified, he "thought all the individuals that were involved [in the offense] were dark-skinned African-Americans," but when he looked at Mr. Landa, he realized "that was not true, he was not the driver."

¶ 11　　　On April 23, 2000, Mr. Mayes's Lexus was recovered from the backyard of Mr. Newell's uncle's girlfriend's house. On May 5, 2000, the police were given consent to search the Grand Am and recovered from inside the trunk of the vehicle keys and key identifiers, along with a bag and a receipt from Menards. No fingerprints matching Mr. Newell, Mr. Landa, or Mr. Barnes were found on the recovered shell casings, handgun, or Mr. Mayes's Lexus. The shell casings were, however, tested by a forensic firearms examiner, who concluded that they had been fired from the 9-millimeter handgun recovered from the motel.

¶ 12　　　After the State rested, defense counsel informed the court that Mr. Landa did not wish to testify, and Mr. Landa confirmed that this was correct. The defense then rested without calling any additional witnesses. The trial court found Mr. Landa guilty of two counts of first degree murder.

¶ 13　　　At the sentencing hearing, Mr. Landa's mother, Sharon Walker, testified in mitigation. In part, she said:

> "I sleep and breathe this whole thing every night and every day. I think about the family because what happened if my son did this? I think about they lost someone. We're not cold-blooded people like the State said my son was an urban predator, that he was an assassin.

No, we didn't raise him like that. I raised that kid. We're hard working people. We never asked nobody for nothing. But this is a serious thing. You got someone that died, got murdered, and they are saying my son did it.

I listened to the evidence. He couldn't have done it. He could not have done it. So now you got someone that's lost their life and you got someone else who is about to lose his life, and the person that did this is getting away scot-free."

¶ 14 The court sentenced Mr. Landa to the minimum sentence—two concurrent terms of 40 years in prison—since he had no prior record.

¶ 15 On direct appeal, this court vacated one of Mr. Landa's convictions as a violation of the one-act, one-crime rule and corrected the mittimus to reflect the correct number of days of sentencing credit. *People v. Landa*, 365 Ill. App. 3d 1101 (2006) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 16                                    B. Postconviction Proceedings

¶ 17 On June 8, 2007, Mr. Landa placed in the prison mail the *pro se* postconviction petition with exhibits that is at issue before this court now, over 13 years later. The same day, Mr. Landa also sent a "motion for leave to supplement/amend post-conviction for cause" and a request for appointment of counsel.

¶ 18 In the petition, Mr. Landa first argued that the untimely filing of his postconviction petition was not due to his culpable negligence because he acted with due diligence in pursuing his postconviction remedies and believed in "good-faith" that his petition would be timely prepared and filed. He explained in his motion that his family had hired an attorney for this purpose but that the attorney had abandoned his petition. Upon learning of this, Mr. Landa had immediately made a diligent effort to locate the necessary witnesses and file the petition himself.

¶ 19 Mr. Landa then set forth nine claims for review. These included two claims that the 20-year sentencing enhancement he received was unconstitutional and multiple claims of ineffective assistance of trial counsel. With respect to the latter, Mr. Landa claimed his trial counsel had failed to investigate witnesses, failed to investigate and present Mr. Landa's alibi defense, failed to investigate the identities of certain people stopped by police in a car that fit the general description of the shooter, failed to investigate witnesses who would have refuted the testimony of the State's key witnesses, and failed to conduct pretrial interviews with the State's witnesses. Mr. Landa also argued that appellate counsel was ineffective for failing to argue on appeal either that Mr. Landa had been subject to an unconstitutional double enhancement or that he was denied due process because the State failed to disclose its agreement with Mr. Newell of " 'considerations[ ] promised' " in exchange for his favorable testimony and the State knowingly using false testimony from Mr. Newell to obtain a conviction.

¶ 20 In support of his petition, Mr. Landa attached his own unnotarized affidavits as well as the unnotarized affidavits of Juan Stout, Lashaun Bell, and Mr. Landa's mother. In his own affidavit, dated June 8, 2007, Mr. Landa attested that there was no notary available at the Menard Correctional Center where he was confined. He further attested to facts consistent with the explanation provided in his motion for leave regarding why his petition should be treated as timely.

- 4 -

¶ 21    In his second affidavit, dated the same day, Mr. Landa said that Michael Wilson was appointed to represent him at trial. Mr. Landa reported that Mr. Wilson asked where he was on April 21, 2000, and he told Mr. Wilson he had gone to work as usual and taken his car in for repairs and that his mother drove him to his house after work to pick up clothes. He and his mother then went to his mother's house and stayed there until 10 p.m., when Mr. Newell came to his mother's house to get him and they went together to meet some girls. He then returned to his mother's home shortly before 1 a.m.

¶ 22    Mr. Landa made clear in his affidavit that he had told Mr. Wilson that between 8 and 8:30 p.m. on April 21, 2000, which is when this murder was alleged to have occurred, he was at his mother's house and that both his mother and Juan Stout, who was living with his mother at the time, could verify this fact.

¶ 23    Mr. Landa also described in this affidavit a conversation between himself and Mr. Wilson, with Mr. Landa's mother present, in which Mr. Wilson had said that Mr. Landa "had better get [his] witnesses together if [he] wanted to present [his] alibi" and told Mr. Landa's mother to call him the following day so they could go see Mr. Stout. Although Mr. Landa's mother was present throughout the whole trial, Mr. Wilson did not put her on the stand until sentencing and never asked her about her son's alibi. He also never called Juan Stout.

¶ 24    Mr. Landa's mother stated in her affidavit that on April 21, 2000, she and Mr. Landa both worked at W.W. Holt Funeral Home and that, because Mr. Landa's car was in the shop for repairs, she suggested that he stay at her house for the weekend and they could commute to work together. He agreed, and after work she drove him to his house to pick up clothes; then they went to her home together, arriving at about 7 p.m. They remained at the house with Mr. Stout, who was living with Ms. Walker at the time, until approximately 10:05 p.m. when Mr. Landa left. Ms. Walker was asleep when Mr. Landa returned.

¶ 25    Ms. Walker also stated that, on the day Mr. Landa's case was set for trial, she spoke to Mr. Wilson and confirmed that he told her and Mr. Landa that they "should get [their] witnesses together if [Mr. Landa] wanted to present his alibi." Ms. Walker also said that Mr. Wilson asked her to call him the next day so they could go see Mr. Stout. She said in her affidavit: "I called the next day, and [virtually] everyday until my son's trial started, [and Mr. Wilson] would not return any of my calls."

¶ 26    Juan Stout stated in his affidavit that on April 21, 2000, he was living with Ms. Walker and he was home all day. Ms. Walker and Mr. Landa arrived at the house at approximately 7 p.m. and stayed until 10 p.m., at which point "Chick" (Mr. Newell's nickname) pulled up, and Mr. Landa left with "Chick." Mr. Landa returned home a few minutes after midnight and then, shortly after, went to bed. Mr. Landa's attorney never reached out to Mr. Stout.

¶ 27    In addition to these three affidavits regarding an alibi defense that was never presented at trial, Mr. Landa attached the affidavit of Mr. Newell's cousin, Lashaun Bell. Mr. Bell attested in his affidavit that Mr. Newell is his cousin and that he also knows Mr. Landa. Mr. Bell said that sometime after the incident, but before Mr. Newell's trial, he was talking with Mr. Newell, who told Mr. Bell that the State made a "deal with him on another case if he testified that [Mr. Landa] had been involved in th[is] case." Mr. Newell told Mr. Bell that Mr. Landa was not, in fact, involved in the case but that he "couldn't pass up the deal the State was making." According to Mr. Bell's affidavit, Mr. Newell said that because the only evidence the police had against Mr. Landa was that he was at the motel later that evening, Mr. Newell did not think

Mr. Landa would be convicted of anything. Mr. Bell also said in his affidavit that he did not reveal this conversation to Mr. Landa or his family until after Mr. Landa was convicted.

¶ 28    Mr. Landa's postconviction petition was filed with the circuit court on July 11, 2007. From the record on appeal, it appears nothing happened with the petition for over three years, until October 22, 2010, when Nathan Diamond-Falk, a privately retained attorney, filed an appearance on Mr. Landa's behalf.

¶ 29    Over three *more* years passed before when, on January 24, 2014, postconviction counsel filed a two-page supplemental postconviction petition for Mr. Landa. This petition added a claim of actual innocence based on the affidavits of Ms. Walker, Mr. Stout, Mr. Bell, and a fourth witness named William Ward. Postconviction counsel argued that the "attached affidavits establish[ed] that [Mr. Landa] was not present during the commission of the crime and is therefore actually innocent" and that trial counsel was ineffective for not presenting that evidence. Postconviction counsel attached executed versions of the affidavits from Ms. Walker, Mr. Stout, and Mr. Bell that were identical to the affidavits that had been attached to Mr. Landa's *pro se* petition, except that they had been notarized.

¶ 30    Also attached to the supplemental postconviction petition was Mr. Ward's one-paragraph, handwritten affidavit, in which he attested that he was at the Clark gas station on 147th Street in Calumet City at approximately 7:30 or 8 on April 21, 2000. As he was sitting at the gas station in his Jeep, Mr. Ward said that a "greenish-purple" Lexus pulled up and a "tall, dark guy approached the Lexus." The man pulled out a handgun and shot the driver of the Lexus. Mr. Ward then drove away. Mr. Ward said he knew that the shooter was not Mr. Landa and would testify to the same if he were called as a witness.

¶ 31    Along with the supplemental petition, postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013), stating "[c]ounsel on oath states that he has communicated with the Petitioner by mail [and] telephonically and has examined the record and transcripts herein and has presented the Petitioner's claims."

¶ 32    The State filed a motion to dismiss the petition on May 23, 2014, on the basis that (1) it was unverified, (2) it was untimely, (3) Mr. Landa's claim that the sentencing enhancement was unconstitutional was unfounded, (4) Mr. Landa's claims of ineffective assistance of trial counsel failed to meet the standard from *Strickland v. Washington*, 466 U.S. 668 (1984), (5) Mr. Landa's allegations of ineffective assistance of appellate counsel were meritless, (6) Mr. Landa's due process violation claim was meritless because it was based on Mr. Bell's affidavit, which was hearsay, and Mr. Landa failed to show that the State knowingly presented or created false testimony, and (7) the evidence supporting Mr. Landa's actual innocence claim was not newly discovered.

¶ 33    In specific reference to the claim that trial counsel was ineffective for failing to present Mr. Landa's alibi defense, the State argued in its motion to dismiss: "The petitioner does not attach any supporting documents that indicate that counsel knew of an alibi defense." The State then argued that this claim should be rejected because Mr. Landa did not testify at trial and his mother, who was one of his alibi witnesses, spoke at his sentencing hearing without mentioning her son's alibi.

¶ 34    At the next court date, on July 11, 2014, postconviction counsel did not appear, but the transcript indicates that he did call the court and asked to be given until September 5, 2014, to file a response to the State's motion to dismiss. On September 5, 2014, the assistant state's attorney said that postconviction counsel had called her office to say he could again not be at

court that day and was seeking time to file a response to the motion to dismiss until September 19, 2014. The court stated that, if postconviction counsel did not file a response on September 19, he would be precluded from filing a response.

¶ 35 Postconviction counsel did appear at the court date on September 19, 2014, but did not file anything and told the court, "[w]e're not prepared to supplement Mr. Landa's petition." The court asked if counsel was going to file a response, and he said he was not.

¶ 36 Argument on the State's motion to dismiss was then held on June 19, 2015. After the State argued in favor of dismissal, postconviction counsel, still having filed no written response, also made no argument and said, "we rely on the pleading that was filed in the case. We certainly have enough presented in our pleading to move the case to a third stage, and we would ask the Court to so move."

¶ 37 On March 3, 2017—almost 10 years after it was first filed—the court finally issued its ruling on Mr. Landa's petition, dismissing it in its entirety. Much of the court's written ruling tracked and sometimes accepted the arguments made by the State in its motion to dismiss. First, the court acknowledged that the State had argued that Mr. Landa's petition was untimely but stated, as the State also noted, that "since the supplemental petition talks about actual innocence, it's not untimely." The court then said that it found all of Mr. Landa's postconviction arguments to be baseless. In specific reference to Mr. Landa's claim that his trial counsel should have investigated his alibi defense, the trial court repeated the State's argument that Mr. Landa's mother had spoken at the sentencing hearing without mentioning the alibi and Mr. Landa did not ask to testify on his own behalf regarding the alibi. The trial court noted that Mr. Landa's actual innocence claim failed both because the evidence was either not newly discovered or not sufficient to prove actual innocence and because Mr. Landa had attempted to "bootstrap" his actual innocence claim to his ineffective assistance and due process claims. In specific reference to Mr. Bell's affidavit, which the court appeared to acknowledge was newly discovered evidence that would have seriously undermined the testimony from Mr. Newell that was the backbone of the State's case, the court said that it was hearsay and thus it must be disregarded.

¶ 38 This appeal followed.

¶ 39                                                    II. JURISDICTION

¶ 40 Mr. Landa's petition was dismissed on March 3, 2017, and he timely filed his notice of appeal on April 3, 2017. However, it was not fully briefed until September 2020. We have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 606 (eff. Dec. 11, 2014) and Rule 651(a) (eff. Feb. 6, 2013), governing criminal appeals and appeals from final judgments in postconviction cases.

¶ 41                                                    III. ANALYSIS

¶ 42 Postconviction proceedings have three possible stages in noncapital cases. *People v. Tate*, 2012 IL 112214, ¶ 9. At the first stage, a petition may only be dismissed if the claims are found to be frivolous or patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). If, as here, the petition is advanced to the second stage of proceedings, the State may move to dismiss the petition. *People v. Gerow*, 388 Ill. App. 3d 524, 526 (2009). At this stage, a petition should be dismissed "when the petition's allegations of fact—liberally construed in favor of the petitioner

and in light of the original trial record—fail to make a substantial showing" of a constitutional violation. *People v. Coleman*, 183 Ill. 2d 366, 382 (1998). In addition, at this stage "all well-pleaded facts are to be taken as true unless they are rebutted by the record." *People v. Clark*, 2011 IL App (2d) 100188, ¶ 16. If the petition makes the required substantial showing, it is then advanced to the third stage of proceedings for the circuit court to hold an evidentiary hearing. *Tate*, 2012 IL 112214, ¶ 10.

¶ 43    On appeal, Mr. Landa makes two distinct but related claims. First, he contends that postconviction counsel's Rule 651(c) certificate was facially deficient. Second, he argues that counsel failed to provide him with reasonable assistance on his postconviction claims. These are both issues that we review *de novo. People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007); *People v. Jones*, 2011 IL App (1st) 092529, ¶ 19. While we agree with the State that the certificate is not facially deficient, we agree with Mr. Landa that the record nevertheless demonstrates unreasonable assistance of his postconviction counsel—at least on Mr. Landa's sixth amendment claim regarding his trial counsel's failure to investigate and present his alibi defense—and thus we remand for further second-stage proceedings.

¶ 44        A. Postconviction Counsel's Rule 651(c) Certificate Was Sufficient

¶ 45    We first consider whether postconviction counsel's certificate filed pursuant to Rule 651(c) was facially sufficient. Rule 651(c) applies to counsel appointed or, as in this case, retained after a *pro se* petition is filed. *People v. Cotto*, 2016 IL 119006, ¶ 41. The purpose of Rule 651(c) is "to ensure that postconviction counsel shapes the defendant's claims into a proper legal form and presents them to the court." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. Specifically, Rule 651(c) requires that the postconviction record

> "shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013).

Substantial compliance with the rule is sufficient. *Profit*, 2012 IL App (1st) 101307, ¶ 18.

¶ 46    By filing a Rule 651(c) certificate, "[p]ostconviction counsel may create a rebuttable presumption that reasonable assistance was provided." *People v. Custer*, 2019 IL 123339, ¶ 32. "It is [the] defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *Profit*, 2012 IL App (1st) 101307, ¶ 19. If a certificate is not filed, in contrast, "a clear and affirmative showing of compliance on the record must be present." (Internal quotation marks omitted.) *People v. Smith*, 2016 IL App (4th) 140085, ¶ 33.

¶ 47    In this case, postconviction counsel filed a certificate saying he had "communicated with the petitioner by mail [and] telephonically," "examined the record and transcripts [t]herein," and "presented the petitioner's claims." Mr. Landa argues that this certificate was facially deficient and thus failed to create a presumption of compliance with the rule, specifically because counsel did not state that his communication with Mr. Landa was "to ascertain [Mr.] Landa's contentions regarding deprivations of his constitutional rights" and also did not state that he made "any necessary amendments to the *pro se* petition or that he concluded that no amendments were necessary to present [Mr.] Landa's *pro se* claims."

¶ 48    The State responds that postconviction counsel's certificate substantially complied with Rule 651(c). The State relies on our decision in *People v. Richardson*, 382 Ill. App. 3d 248, 257 (2008). In *Richardson*, we found a Rule 651(c) certificate to be sufficient where postconviction counsel "consulted with [the defendant] by letters," "obtained and examined the report of proceedings [in the defendant's] trial," and "prepared a supplemental petition for postconviction relief 'augmenting [the defendant's] previously filed Petition.' " *Id.* at 251. Acknowledging that counsel's certificate did not mirror the exact language of Rule 651(c), we found that it was still "reasonable to infer" that counsel consulted with the defendant to " 'ascertain his contentions' " as required by the rule. *Id.* at 257.

¶ 49    Similarly, here, although counsel's certificate did not mirror the language of Rule 651(c) precisely, it still substantially complied with the rule. Postconviction counsel stated that he communicated with Mr. Landa, reviewed the record and transcripts, and presented Mr. Landa's claims. We find these statements were sufficient to meet the requirements of a Rule 651(c) certificate.

¶ 50    However, the fact that the Rule 651(c) certificate was sufficient is not dispositive of Mr. Landa's claims. Our supreme court has stated that it "do[es] not intend to suggest that an attorney's Rule 651(c) certificate is conclusive of compliance and can never be rebutted." *People v. Perkins*, 229 Ill. 2d 34, 52 (2007). Rather, "Rule 651(c) is merely a vehicle for ensuring a reasonable level of assistance [citation] and should not be viewed as the only guarantee of reasonable assistance in postconviction proceedings." (Internal quotation marks omitted.) *Cotto*, 2016 IL 119006, ¶ 41.

¶ 51    Because the certificate that counsel filed comported with Rule 651(c), we start with the rebuttable presumption that counsel provided Mr. Landa with the reasonable assistance that the law requires. *Custer*, 2019 IL 123339, ¶ 32. We next consider whether Mr. Landa has overcome that presumption.

¶ 52                    B. Postconviction Counsel Failed to Provide Reasonable Assistance

¶ 53    Mr. Landa argues that postconviction counsel failed to provide reasonable assistance by failing to (1) make amendments to Mr. Landa's petition that were required to adequately present Mr. Landa's claims, including filing notarized verification and evidentiary affidavits signed by Mr. Landa, (2) rebut the State's argument that Mr. Landa did not show a lack of culpable negligence in filing his petition late, (3) reshape Mr. Landa's sentencing challenge under the Illinois proportionate penalties clause into a viable claim, and (4) file a supplemental petition or pleading in response to the State's motion to dismiss.

¶ 54    The State's primary argument is that none of these purported failures was a basis for the circuit court's dismissal of Mr. Landa's petition, in other words, that Mr. Landa was not prejudiced by his counsel's lack of attention. Mr. Landa insists, in response, that he is not required to make a showing of prejudice.

¶ 55    We think both parties have somewhat missed the mark. Contrary to his assertions, Mr. Landa was in fact required to demonstrate that his counsel's deficient performance prejudiced him in this postconviction proceeding. But the State's argument is not well taken either, because it is clear to us that counsel's performance *did* result in the dismissal of at least one potentially meritorious postconviction claim.

¶ 56 Mr. Landa argues, relying on *Suarez*, 224 Ill. 2d at 51-52, he is not required to show that any of his claims had merit or that he otherwise suffered prejudice from postconviction counsel's alleged failure to meet his obligations under Rule 651(c). In *Suarez*, our supreme court held that "remand is required" where postconviction counsel fails to comply with Rule 651(c), "regardless of whether the claims raised in the petition had merit." *Id.* at 47. However, the postconviction counsel in *Suarez* filed no Rule 651(c) certificate, and the issue in that case was whether counsel had at all complied with the rule's requirements. This is a different question than whether counsel, having filed a substantially compliant certificate giving rise to a rebuttable presumption of reasonable assistance, nevertheless failed to reasonably assist the defendant in the presentation and defense of his postconviction petition.

¶ 57 In *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 30, we summarized the law as follows: "where, as here, the presumption of reasonable assistance is present, the question of whether the *pro se* allegations had merit is crucial to determining whether counsel acted unreasonably by not filing an amended petition." (Internal quotation marks omitted.)

¶ 58 As *Gallano* makes clear, the *Suarez* court's statement that it does not matter whether a particular defendant's postconviction claim has merit (*Suarez*, 224 Ill. 2d at 51) applies when counsel fails to file a Rule 651(c) certificate. It may also apply where counsel has failed to perform one of the three specific duties outlined in that rule. However, where, as in this case, a defendant is claiming that postconviction counsel performed those duties deficiently or otherwise failed to provide reasonable assistance, the defendant must show not only how the attorney's performance was deficient or unreasonable but also what prejudice resulted from that deficiency.

¶ 59 Mr. Landa filed his *pro se* petition in 2007, after his first postconviction lawyer completely failed to fulfill a promise to file a petition on his behalf. After a second postconviction lawyer was hired, it took that lawyer three years to file a two-page supplemental petition. Postconviction counsel added one argument and then supplied essentially the same affidavits that Mr. Landa had already collected, although he did get some of those affidavits notarized. Postconviction counsel did not get Mr. Landa's own affidavits notarized. And although postconviction counsel added one additional affidavit from Mr. Ward, he made no attempt to explain why Mr. Ward's testimony was newly discovered, provide any specifics to support Mr. Ward's claimed knowledge that Mr. Landa was not the shooter, or reconcile Mr. Ward's statement with the rest of the eyewitness testimony. The supplemental petition did not even address whether there was any culpable negligence in Mr. Landa's delay in filing his *pro se* petition or the fact that his original lawyer never filed the postconviction petition that he had promised.

¶ 60 Over a year then passed from the time the State filed its motion to dismiss to when argument was held on that motion. Although postconviction counsel repeatedly assured the court that he was going to respond to the State's motion, he never did so. Finally, at the hearing on the motion to dismiss, postconviction counsel stood mute and supplied no argument either in writing or orally as to why the State's motion to dismiss should be denied.

¶ 61 Mr. Landa argues that his postconviction counsel provided unreasonable assistance in the four respects outlined above. We will focus on the deficiencies that relate directly to his postconviction claim of ineffective assistance of trial counsel since, in our view, that was a claim that would have most clearly merited a third-stage hearing if it had been properly presented.

- 10 -

¶ 62     Mr. Landa's postconviction counsel failed to amend his petition with notarized verification and evidentiary affidavits from Mr. Landa himself. Section 122-1(b) of the Act requires a postconviction petition be "verified by affidavit" (725 ILCS 5/122-1(b) (West 2016)) so as to "confirm[ ] that the allegations are brought truthfully and in good faith" (*People v. Collins*, 202 Ill. 2d 59, 67 (2002)). The Act also requires that a petition, to show that "the verified allegations are capable of objective or independent corroboration" (*id.*), "have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached" (725 ILCS 5/122-2 (West 2016)). At the second stage, if affidavits attached to a petition have not been notarized, "the court may dismiss the petition upon the State's motion." *People v. Allen*, 2015 IL 113135, ¶ 35. Mr. Landa's postconviction counsel took no action, in the many years that he represented Mr. Landa, to ensure that the key affidavit supporting the petition—Mr. Landa's own—was verified. This was a failure to provide reasonable assistance.

¶ 63     Had postconviction counsel ensured that Mr. Landa's evidentiary affidavit was notarized, the circuit court would have been required to take that affidavit as true, along with the affidavits of Mr. Landa's mother and Mr. Stout. It is blackletter law that, at the second stage, all well-pleaded facts in a postconviction petition must be taken as true unless they are positively rebutted by the record. *People v. Sanders*, 2016 IL 118123, ¶ 42 (citing *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006), and *People v. Childress*, 191 Ill. 2d 168, 174 (2000)); *People v. Velasco*, 2018 IL App (1st) 161683, ¶ 117. Thus, the circuit court would not have been able to reject Mr. Landa's claim of ineffective assistance of trial counsel—as it did—on the basis that it did not have factual support.

¶ 64     In addition, Mr. Landa's postconviction counsel, despite repeatedly advising the court that he intended to do so, never responded in any manner to the State's motion to dismiss the petition. While he had more than a year to do so, counsel never provided any argument, in writing or orally, in opposition to the State's motion. When the court finally ruled on Mr. Landa's petition, over a year after the parties first appeared on it, the court accepted wholesale the State's unrebutted arguments that Mr. Landa did not have a good alibi defense because he had not testified about it on his own behalf and his mother had made no specific mention of it at sentencing.

¶ 65     While Rule 651(c) does not specifically reference postconviction counsel's obligation to present legal arguments, our supreme court has repeatedly recognized that reasonable assistance includes "adequately" presenting and supporting the constitutional claims raised by the defendant. *Pendleton*, 223 Ill. 2d at 472; *People v. Davis*, 156 Ill. 2d 149, 164 (1993). Postconviction counsel's failure to make any argument at all, when there were compelling arguments to be made, was a clear failure to adequately present or support Mr. Landa's claim that he had not received effective assistance from his trial counsel.

¶ 66     Mr. Landa's *pro se* petition included Mr. Landa's detailed evidentiary affidavit, in which he said that he told his trial counsel about his alibi. This affidavit was in turn supported by a detailed affidavit from his mother, who explained why Mr. Landa was at her house when the murder occurred, that Mr. Stout was also present at that time, and that she had called Mr. Landa's trial counsel daily to make clear that she wanted to testify to this. These affidavits were further supported by Mr. Stout's affidavit confirming that Mr. Landa had been at his mother's house when the murder occurred.

¶ 67     If the court had accepted the statements in these affidavits as true, as it was required by law to do, it would also have been required to examine whether these statements were positively

- 11 -

rebutted by the record. *Sanders*, 2016 IL 118123, ¶ 42. The facts that the State cited in its motion to dismiss and that the trial court relied on fell far short of the positive rebuttal by the record that is required. What the court itself noted—that Ms. Walker never mentioned an alibi when she spoke in favor of her son at sentencing and that Mr. Landa himself did not elect to testify in his own defense—is completely consistent with the facts in the affidavits and can be explained in many ways. Neither of these facts is the kind of affirmative rebuttal that would have permitted the trial court to disregard the factual statements in the affidavits. See *People v. Robinson*, 2020 IL 123849, ¶ 60 ("[f]or new evidence to be positively rebutted, it must be clear from the trial record that no fact finder could ever accept the truth of that evidence, such as where it is affirmatively and incontestably demonstrated to be false or impossible").

¶ 68 Had the trial court understood that it must accept the unrebutted statements in these affidavits as true, Mr. Landa's ineffective assistance of trial counsel claim would have some obvious merit. There was no physical evidence tying Mr. Landa to the crime. The only evidence against him came from his codefendant, with only slight corroboration from two women that codefendant knew and Mr. Landa did not. An independent eyewitness testified at trial that the person he saw driving away in the victim's car, whom two other independent witness had said was the shooter, was not Mr. Landa.

¶ 69 As we have recognized in other cases where the evidence at trial was closely balanced and the State's case hinged on identity, trial counsel's failure to call witnesses who would have corroborated that the defendant was not one of the offenders could not "be attributed to a professionally reasonable tactical decision"; nor, in such cases, could we "conceive of any sound reason for failing to have th[o]se witnesses at trial." *People v. Butcher*, 240 Ill. App. 3d 507, 510 (1992); see also *People v. King*, 316 Ill. App. 3d 901, 913 (2000) ("counsel's tactical decisions may be deemed ineffective when they result in counsel's failure to present exculpatory evidence of which he is aware, including the failure to call witnesses whose testimony would support an otherwise uncorroborated defense"); *People v. Skinner*, 220 Ill. App. 3d 479, 485 (1991) ("We have held the failure to call witnesses who would support an otherwise uncorroborated defense to be ineffective assistance of counsel. [Citation.] We so hold again here."). We have also found that "[w]hen the record is unclear concerning whether trial counsel's decision not to call exculpatory witnesses was a matter of trial strategy incompetence, the defendant is entitled to a postconviction evidentiary hearing on that issue." *People v. Willingham*, 2020 IL App (1st) 162250, ¶ 48.

¶ 70 In short, Mr. Landa's claim of ineffective assistance of trial counsel was potentially meritorious, and postconviction counsel's failure to support that claim with argument and a notarized affidavit from Mr. Landa was a failure to provide reasonable assistance that prejudiced the outcome of Mr. Landa's postconviction proceeding.

¶ 71 At the second stage of postconviction proceedings, the court considers whether the defendant has made a substantial showing of constitutional error on any claim in the petition, so that claim can proceed to the third stage. *People v. Cleveland*, 2012 IL App (1st) 101631, ¶ 55. And because we are remanding, as Mr. Landa requests, for further second-stage proceedings, we need not sort out which, if any, of his other claims might necessitate a third-stage hearing. As our supreme court has said, we are not to presume how the trial court would have ruled on a petition at the second stage "if counsel had adequately performed his duties under Rule 651(c)," because "[i]t is the duty of the trial court *** to determine on the basis of

a complete record whether the [postconviction] claims require an evidentiary hearing." *People v. Johnson*, 154 Ill. 2d 227, 246 (1993).

¶ 72 However, given the extraordinary delays that have already occurred in this case, all the parties and the court on remand are urged to expedite this case, resolve the merit of Mr. Landa's postconviction claims, and proceed promptly to a third-stage hearing on any claims that merit one.

¶ 73                                IV. CONCLUSION

¶ 74 In conclusion, because postconviction counsel filed a sufficient Rule 651(c) certificate, Mr. Landa was required to and, in fact, did overcome the presumption that he received reasonable assistance. We reverse the circuit court's dismissal of Mr. Landa's petition and remand for further second-stage proceedings, for which Mr. Landa should be appointed postconviction counsel. Given the extraordinary delays that have occurred in this case since this petition was first filed by Mr. Landa over 13 years ago, we direct the circuit court to act promptly to resolve the claims raised by this petition.

¶ 75 Reversed and remanded with directions.