2022 IL App (1st) 191915-U

SECOND DIVISION
December 13, 2022

No. 1-19-1915

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 18816 |
| | ) | |
| YOQUAN WILLIAMS, | ) | Honorable |
| | ) | Thaddeus L. Wilson, |
| Petitioner-Appellant. | ) | Judge Presiding. |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Post-conviction counsel provided reasonable assistance at second stage where (1) counsel filed facially valid Rule 651(c) certificate and presumption of reasonable assistance is unrebutted; (2) counsel did not "fail" to attach DNA report that was already attached to *pro se* petition; and (3) there was no "viable and readily obvious" claim of actual innocence for counsel to allege in amended petition.

¶ 2    After pleading guilty to predatory criminal sexual assault of a child, petitioner Yoquan Williams filed a post-conviction petition alleging various claims of ineffective assistance of plea counsel. The circuit court dismissed the petition at the second stage of proceedings. On appeal, petitioner argues that appointed post-conviction counsel—"counsel," for short—failed to provide the "reasonable assistance" guaranteed by statute. In particular, he claims that counsel failed to examine a relevant part of the record, failed to obtain a DNA report from the Illinois State Police

(ISP) and attach it to the petition, and failed to amend the petition to add a "viable, and readily obvious," claim of actual innocence. We disagree on all grounds and affirm.

¶ 3                                 BACKGROUND

¶ 4      Petitioner entered a negotiated plea of guilty to one count of predatory criminal sexual assault of a child. The victim, T.W., was his daughter. With respect to this charge, the State alleged that starting on or about February 23, 2006, and continuing through February 22, 2011, petitioner committed repeated acts of sexual penetration, namely, "contact between [petitioner's] penis and [T.W.'s] vagina;" and that T.W. was under 13 years of age at the time.

¶ 5      The parties stipulated to the following factual basis for the plea. If called as a witness, T.W. would testify that she was born on February 23, 1998. When she was in fourth grade, and about 9 years old, petitioner came into her bed, removed her clothing, turned her onto her side, and tried to put his penis into her vagina. T.W. resisted by squeezing her vagina, so that he could not fully penetrate it. Similar incidents continued "through the ages of 11 and 12." During this time period, petitioner was over the age of 18, and T.W. was under the age of 13.

¶ 6      In exchange for the plea, the State dismissed charges of criminal sexual assault, which alleged similar incidents after T.W.'s thirteenth birthday; and a separately charged case, in which the State also alleged similar conduct. If convicted of the charges in both cases, petitioner faced life in prison. Pursuant to the negotiated plea, he was sentenced to 18 years.

¶ 7      After his plea, petitioner filed a *pro se* motion to reduce his sentence, in which he argued that T.W. was not under the age of 13 at the time of the offense. (As he would later argue in his petition.) The trial court denied the motion, noting that because petitioner's plea was negotiated, with an agreed sentence, his only option was to move to withdraw the plea entirely. Petitioner did not file that motion or take a direct appeal.

¶ 8    Petitioner filed a timely post-conviction petition, in which he alleged that plea counsel was ineffective on various grounds. Two of those allegations are relevant to the issues raised in this appeal. First, an analysis of the vaginal swab taken from T.W. found that petitioner's DNA could not be excluded from the sperm fraction. Petitioner alleged that plea counsel misadvised him about the significance of this finding. Specifically, plea counsel told him that "cannot be excluded" is the same thing as a "match."

¶ 9    Petitioner further claimed that on January 3, 2017—about 8 months after his plea—he received a DNA report from ISP showing that there was a "DNA loci that do not match [him], or the alleged victim." The petition refers to this report as "Exhibit #1," and a copy of the exhibit immediately follows the petition in the record. (Or more precisely, one copy of the petition; by our count, there are three copies of the petition in total. More on this later.)

¶ 10    Second, petitioner alleged that plea counsel was ineffective for failing to "seek" a lesser charge. According to petitioner, T.W. did not testify at the preliminary hearing that any sexual penetration occurred while she was under the age of 13. Thus, he should not have been convicted of predatory criminal sexual assault of a child, but at most a lesser offense.

¶ 11    (Petitioner also alleged that his plea was entered under duress, after counsel misadvised him about various other matters; and that counsel failed to show that T.W. had "a propensity to claim multiple people either raped her, or tried to.")

¶ 12    The circuit court docketed the petition and appointed counsel. Some 15 months later, counsel filed a Rule 651(c) certificate stating, among other things, that it was not necessary to amend the *pro se* petition. The State filed a motion to dismiss, which the circuit court granted. On appeal, petitioner does not contest that ruling on substantive grounds. His arguments pertain entirely to the adequacy of the representation that he received at the second stage of proceedings.

No. 1-19-1915

¶ 13                                    ANALYSIS

¶ 14     The Post-Conviction Hearing Act affords petitioners a statutory right to counsel at the second (and third) stage of proceedings. 725 ILCS 5/122-4 (West 2020). This statutory right guarantees only a "reasonable level of assistance from counsel," a decidedly lower standard than the "effective assistance of counsel" guaranteed by the sixth amendment. *People v. Custer*, 2019 IL 123339, ¶ 30; see *Strickland v. Washington*, 466 U.S. 668 (1984).

¶ 15     Counsel's limited duties are enumerated, and thus limited, by Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013), which requires counsel to (1) consult with the petitioner either by mail or in person to ascertain his constitutional claims; (2) examine "the record of the proceedings at the trial;" and (3) make any amendments to the *pro se* petition that are necessary for an adequate presentation of the petitioner's claims.

¶ 16     A facially adequate Rule 651(c) certificate filed by appointed counsel creates a rebuttable presumption of reasonable assistance. *Custer*, 2019 IL 123339, ¶ 32. For this purpose, counsel's certificate must "substantially comply" with the rule. See, *e.g.*, *People v. Landa*, 2020 IL App (1st) 170851, ¶¶ 45-49. Whether a Rule 651(c) certificate was substantially compliant, and whether counsel provided reasonable assistance, are both questions we review *de novo*. *Id.* ¶ 43.

¶ 17                         I. Failure to review preliminary hearing

¶ 18     Petitioner first contends that counsel failed to provide a reasonable level of assistance because neither the Rule 651(c) certificate nor the record as a whole establishes that counsel reviewed the transcript of T.W.'s testimony at the preliminary hearing. This testimony was the basis for petitioner's *pro se* claim that plea counsel was ineffective for not "seeking" a lesser charge: in petitioner's view, T.W. never testified that any "sexual penetration" took place while she was under the age of 13, as required by the offense of predatory criminal sexual assault of a

- 4 -

child, to which petitioner pleaded guilty. See 720 ICLS 5/11-1.40 (West 2020).

¶ 19    To begin, petitioner's *pro se* ineffectiveness claim rests on an evident misunderstanding of the element of "sexual penetration." As defined by statute, this element is satisfied by "any contact, however slight," between petitioner's penis and T.W.'s vagina. *Id.* § 11-0.1. And T.W. testified at the preliminary hearing that such contact began when she was 8 or 9 years old. (As the parties later stipulated at the plea hearing.) Though the contact fell short of penetration in the colloquial sense—T.W. "made it tight to where he can't stick it in"—she confirmed, when asked by the State, that petitioner's penis did "touch" her vagina during these incidents.

¶ 20    Petitioner does not dispute any of this. Nor does he contend that counsel should have amended this *pro se* ineffectiveness claim. His claim is simply that counsel failed to discharge a duty imposed by Rule 651(c), and thus that a remand is necessary for compliance with the rule.

¶ 21    On its face, Rule 651(c) requires "a showing, which may be made by the certificate of the petitioner's attorney, that the attorney * * * has examined the record of the *proceedings at the trial*." (Emphasis added.) Ill. S. Ct. Rule 651(c) (eff. Feb. 6, 2013). As our supreme court has interpreted the rule, the phrase "proceedings at the trial" functions as a term of art. It is not to be read literally, and thus narrowly, as referring only to an actual trial. (Here, of course, there was no trial.) Nor is it to be given the broadest interpretation, as referring to the entire record of all proceedings held in the trial court.

¶ 22    The correct interpretation of Rule 651(c) lies between these extremes. The rule requires counsel "to examine as much of the transcript of proceedings as is necessary to adequately present and support those constitutional claims raised by the petitioner." *People v. Davis*, 156 Ill. 2d 149, 164 (1993). In other words, the phrase "proceedings at the trial," as it is used in the rule, means whatever proceedings—pretrial, trial, or post-trial—that are relevant to the claims raised

in the *pro se* petition.

¶ 23　Now suppose that a Rule 651(c) certificate repeats the language of the rule, verbatim: counsel "examined the record of the proceedings at the trial." We would be hard-pressed to say that this certificate did not substantially comply with the rule, since it attests that counsel did *exactly* what the rule says. And even if there was no trial, because the petitioner pleaded guilty (as here), the phrase "proceedings at the trial," as used in the certificate, would continue to function as a term of art, as it does in the rule itself. So whether there was a trial or a guilty plea, a certificate that hews to the language of the rule verbatim will substantially comply and will thus warrant a presumption of reasonable assistance. See *People v. Richardson*, 382 Ill. App. 3d 248, 257 (2008). To hold otherwise would be to hold that *literal* compliance with Rule 651(c) is insufficient, an obviously untenable position.

¶ 24　To put the point differently: when counsel *says* what the rule *says*, we presume that counsel *means* what the rule *means*, unless the petitioner can rebut that presumption in the record and show that counsel meant something else. Otherwise, "substantial compliance" would require the certificate to do *more* than adhere to the language of the rule, which cannot be right. And it is hard to imagine what would suffice, short of a "comprehensive recounting" of what counsel reviewed in the record, item by item—a requirement that the case law has long rejected. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 24.

¶ 25　Here, for example, where petitioner claims that counsel failed to review T.W.'s preliminary hearing testimony—had counsel merely recited the rule's language and sworn that he reviewed "the record of the proceedings at the trial," petitioner would have no argument about the Rule 651(c) certificate. We would say that "the proceedings at trial" means only the *relevant* proceedings per our supreme court (*Davis*, 156 Ill. 2d at 164), so we presume that is what

counsel meant, too, when he recited the language of the rule. In other words, we would presume that counsel *did* review T.W.'s preliminary hearing testimony.

¶ 26    But alas, lawyers sometimes do not hew their Rule 651(c) certificates to the language of the rule. That can lead to trouble, of course, because if, instead of just reciting the rule's language, the certificate lists out the specific portions of the record that counsel reviewed, the failure to list a relevant portion of the record can lead to a finding that counsel did *not* review everything she was supposed to review. See, *e.g.*, *People v. Carrizoza*, 2018 IL App (3d) 160051, ¶ 18 (certificate stating that counsel reviewed "report of proceedings of the plea of guilty and the sentencing" did not establish that counsel reviewed transcript of suppression hearing, which was relevant to one of postconviction petition's claims).

¶ 27    The path of least resistance, obviously, is for counsel to simply parrot the Rule 651(c) language verbatim in the certificate; doing so is a guarantee that the presumption of reasonable assistance will attach. The lawyer who steps out on that limb and purports to list every single item in the record that she reviewed runs the risk of omitting something relevant and thus losing that presumption. See *id.*

¶ 28    The Rule 651(c) certificate before us is a hybrid of these two situations. Here, the certificate precisely mirrored the language of the rule but then *added* one specific portion of the record that counsel reviewed. The certificate here states that counsel "obtained and examined the record of the proceedings at the trial *and sentencing* in this case." (Emphasis added.) The certificate begins with the literal language of Rule 651(c), as it should, but then adds the words "and sentencing."

¶ 29    And that, says petitioner, suggests that counsel did *not* intend "the record of the proceedings at trial" to have the term-of-art meaning our supreme court has ascribed to it,

namely that the phrase refers to all proceedings relevant to the postconviction petition—for if he had meant as much, he would have had no need to add "and sentencing" to the end. This case, he says, is more like a case where counsel listed out the various portions of the record he reviewed, as in *Carrizoza*, 2018 IL App (3d) 160051, ¶ 18. And just like that case, here the certificate does *not* list a relevant portion of the record—the transcript of T.W.'s preliminary hearing testimony. Simply put, petitioner claims that the Rule 651(c) certificate here is not substantially compliant, because it indicates that counsel failed to review the preliminary hearing transcript of T.W.'s testimony that was highly relevant to his postconviction petition.

¶ 30    We find the certificate substantially compliant with Rule 651(c). For one, this does not strike us as a situation, as in *Carrizosa*, where counsel purported to singularly list the portions of the record reviewed. Counsel used the general term-of-art language, and we do not think Rule 651(c) is so persnickety as to disregard that language simply because counsel added one specific item in the record. And that is particularly true when we consider the context, as we may do. See *Richardson*, 382 Ill. App. 3d at 257 (court may draw reasonable inferences when construing Rule 651(c) certificate).

¶ 31    Here, it strikes us that counsel's reason for adding the sentencing language is rather obvious: counsel was importing language from Rule 604(d), which governs attorney review of a *pro se* motion to withdraw a guilty plea. See Ill. S.Ct. R. 604(d) (eff. July 1, 2017). Though incorrect, it would not be altogether unreasonable for counsel to consult Rule 604(d), given that, at bottom, petitioner's claim here is that trial counsel should not have allowed him to plead guilty to the offenses to which he pleaded, that he should have insisted on a plea to lesser-included offenses. We could understand why counsel might have felt the need to include additional language from Rule 604(d), even if it was unnecessary (and incorrect) to do so.

¶ 32    We have previously recognized that Rule 604(d) is similar to Rule 651(c), though obviously more limited in scope. See *People v. Mason*, 2016 IL App (4th) 140517, ¶ 22; *Carrizoza*, 2018 IL App (3d) 160051, ¶ 15. Indeed, lawyers have not infrequently filed certificates pursuant to Rule 604(d) when they intended to file Rule 651(c) certificates, instead. See *Carrizoza*, 2018 IL App (3d) 160051, ¶ 14; *Mason*, 2016 IL App (4th) 140517, ¶ 22; *People v. Kirkpatrick*, 2012 IL App (2d) 100898, ¶ 4.

¶ 33    In relevant part, Rule 604(d) requires counsel to certify that counsel "has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing ***." Ill. S.Ct. R. 604(d) (eff. July 1, 2017). It seems clear to us that counsel, out of an abundance of caution, wanted to ensure that the reference to the "sentencing hearing" (*id*.) was included in the Rule 651(c) language. It was, again, both unnecessary and incorrect, but we think it would be a bridge too far to suggest that this mistake renders the Rule 651(c) certificate here noncompliant. We find substantial compliance, entitling counsel to a presumption of reasonable assistance.

¶ 34    Which places the burden on petitioner to rebut that presumption. *Landa*, 2020 IL App (1st) 170851, ¶ 46. To this end, he must point to evidence in the record demonstrating that counsel failed to review the preliminary hearing. *Id*. But there is no such evidence; the record is more or less silent on this point. And that is a problem for petitioner, as the burden lies with him.

¶ 35    That said, the record does show this much. At his first court appearance, counsel stated on the record that he "had a chance to look through the court file." This was in addition to the *pro se* petition and a transcript of the plea hearing, which the judge had already ordered.

¶ 36    Now rewind a few years. At petitioner's arraignment, the judge had noted that there was "a transcript in the file." The only proceeding that had, or could have, taken place before the

arraignment (on October 23, 2012) was the preliminary hearing (on October 4). A transcript of the preliminary hearing was prepared on October 11 and file-stamped on October 22, one day before the arraignment.

¶ 37 So it appears that the preliminary hearing transcript made its way into the court file, as indeed it should have. Thus, it *should* have been available for counsel's review. Granted, that was some years earlier, and things do get lost. And for all the record shows, counsel may have just leafed through the court file, to get an overview of the case, without stopping to examine the preliminary hearing transcript more closely. Nothing in the record decisively shows that counsel conducted the necessary review. But the record at least points in that direction. And more to the point, it certainly does not *rebut* the presumption of reasonable assistance. That presumption stands.

¶ 38 In short, while the certificate filed here is not as clear as it could be, it does substantially comply with Rule 651(c), warranting a presumption of reasonable assistance that petitioner cannot rebut.

¶ 39                              II. Failure to submit DNA report

¶ 40 Petitioner next claims that he did not receive reasonable assistance because counsel failed to "obtain" the DNA report from ISP and "attach" it to the petition. This report, appellate counsel says, would have supported petitioner's claim of "actual innocence."

¶ 41 (More precisely, petitioner claimed that he was induced to plead guilty by plea counsel's ineffectiveness, despite having a plausible defense of innocence. Petitioner also claims on appeal that counsel should have recast this *pro se* ineffectiveness claim as a claim of actual innocence. We will return to this point in the next issue.)

¶ 42     When counsel filed the Rule 651(c) certificate, he stated on the record that he "reviewed" the DNA report. So counsel "obtained" it. Unless he had it from the start—perhaps because it was included with the *pro se* petition as an exhibit—in which case, counsel didn't need to "obtain" it in the first place.

¶ 43     And indeed, the record clearly shows that petitioner had already "attached" the report to the *pro se* petition. The petition states that he received a copy of the report on January 3, 2017, about a month before filing the petition. (The report was created in 2012 and, truth be told, the record shows that it was known to the defense before the guilty plea.) The petition refers to the report as "Exhibit #1." There is a copy of the report in the record, immediately following a file-stamped copy of the petition. The report is marked "Exhibit #1." (In handwriting that looks the same as the handwriting in the petition proper.) The report had already been submitted to the circuit court. There was no need for counsel to "attach" it again.

¶ 44     In its written order granting the State's motion to dismiss, the circuit court did say that petitioner "did not attach [the DNA report] to his petition and it is not of record in this case." That isn't true; the report *is* in the record. What does appear to be true is that the petition and its accompanying exhibits were mishandled in the circuit court.

¶ 45     There are three copies of the petition in the record. One copy includes the DNA report but not petitioner's Exhibit #2. Another includes Exhibit #2 but not the DNA report. The third does not include either exhibit. It would appear, from the dismissal order, that the judge's copy of the petition, like at least one other copy in the circuit court, was incomplete. But this doesn't show that petitioner failed to attach the DNA report. And from counsel's perspective, there was no way to know that the judge didn't have a copy of the report in hand until the court issued its written order.

¶ 46    Petitioner does not argue on appeal that counsel should have (re)submitted the DNA report after the court issued its dismissal order, perhaps as part of a motion to reconsider, in an effort to ensure that the judge did not dismiss the relevant claims without first reading the report. But in any event, we cannot fault counsel for not doing so.

¶ 47    On a motion to dismiss, the circuit court was required to take all well-pleaded allegations as true. *Landa*, 2020 IL App (1st) 170851, ¶ 42. To this end, the court assumed that the report said what it was alleged to say—and went on to find that it did not support the plausible defense petitioner thought he had. Petitioner does not claim that the court misdescribed the DNA report. (Though petitioner's own allegations do exactly that, as we explain below.) So there was nothing to be gained then by submitting a fresh copy to the judge, or by remanding now for this futile exercise. The real question is whether the report actually supported a viable claim. And that brings us to the third and final appellate issue.

¶ 48                          III. Failure to add actual-innocence claim

¶ 49    Petitioner contends that counsel failed to amend the petition to present a "viable, and readily obvious" claim of actual innocence. While counsel has no general duty to amend a *pro se* petition, or to add new contentions that the petitioner did not include, counsel must make any amendments that are "necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013); *People v. Turner*, 187 Ill. 2d 406, 412 (1999); *People v. Johnson*, 154 Ill. 2d 227, 238 (1993). An amendment is not "necessary" if it "would only further a frivolous or patently nonmeritorious claim." *People v. Greer*, 212 Ill. 2d 192, 205 (2004).

¶ 50    Here, petitioner argues that it was necessary for counsel to recast the *pro se* claim of ineffective assistance (discussed above) as a claim of actual innocence, in order to shape that contention into its proper legal form. A defendant who alleges a claim of actual innocence after

pleading guilty must present evidence that is newly discovered, material, non-cumulative, and of such a conclusive character that it "clearly and convincingly demonstrates that a trial would probably result in acquittal." *People v. Reed*, 2020 IL 124940, ¶ 49. The newly discovered evidence must be considered alongside all other available evidence, including the petitioner's own admission of guilt. *Id.* ¶ 46; see *People v. Robinson*, 2020 IL 123849, ¶ 83.

¶ 51     Taking his allegations as true, petitioner says, the DNA report demonstrates that he was "actually innocent of predatory criminal sexual assault." His key allegation is this: the sample taken from T.W.'s vaginal swab contained a profile that did not match either T.W. or petitioner. In petitioner's words, the sample "contained a mixture of more than two persons' DNA profiles," and "there was a DNA loci that do not match [petitioner], or the alleged victim." This shows that "another suspect was connected with [this] crime," and that petitioner himself is innocent (as he told plea counsel, before being induced to plead guilty by plea counsel's alleged deficiencies.)

¶ 52     The DNA report does not support a non-frivolous claim of actual innocence. There are various reasons for this, but two simple points will suffice.

¶ 53     First, let's assume, as petitioner alleges, that the sample taken from T.W. contained DNA from "more than two" people, and that the third person was neither petitioner nor T.W. None of this shows that petitioner's DNA was *not* found in the sample. So it does not contradict T.W.'s testimony (to which the parties stipulated in the factual basis for the plea) that petitioner sexually penetrated her, within the meaning of the statute. Rather, if true, this allegation would show that at least one person other than petitioner did, too.

¶ 54     The report, thus construed, might have supported a reasonable doubt argument at a trial, especially if the DNA evidence purporting to implicate petitioner was "weak," as he argues on appeal. But a theory of reasonable doubt falls short of a claim of actual innocence. Even when

we take all of petitioner's allegations as true, the DNA report does not establish his innocence.

¶ 55     Second, to the extent that petitioner misdescribes the DNA report, those allegations are positively rebutted by the record, and we are not bound to take them as true. See *Robinson*, 2020 IL 123849, ¶ 60; *Landa*, 2020 IL App (1st) 170851, ¶ 42. Regardless of what petitioner (or appellate counsel) alleges, the report speaks for itself. And this is what it says:

> A mixture of human DNA profiles was identified in the sperm fraction of Exhibit 1A1 which was interpreted as a mixture of two people. Assuming this profile is a mixture of [redacted] and one additional contributor, a human male DNA profile was identified from which [petitioner] cannot be excluded. Approximately 1 in 33,000 Black, 1 in 740,000 White, or 1 in 1.0 million Hispanic unrelated individuals cannot be excluded from having contributed to this male DNA profile.

¶ 56     The report says that the DNA sample "was interpreted as a mixture of *two* people," and not, as petitioner alleges, "more than two" people. And contrary to petitioner's allegations, the report does not say that any part of the DNA profile was attributed to someone other than T.W. or petitioner. Rather, the report "[a]ssum[ed]" that the profile was "a mixture of [redacted] and one additional contributor."

¶ 57     The redacted name cannot be anyone other than T.W. The analyzed sample was taken from her, so of course it was assumed that the DNA profile in the sample included her own. Any other DNA would belong to a suspect. The only "suspect" named in the report is petitioner. And in any event, a forensic analysis cannot ever *assume* that any suspect's DNA is present in a sample taken from a rape kit. The whole point of the analysis is to *determine* if that is the case.

¶ 58     The other two redactions in the report only reinforce this conclusion. The first redaction is the name of the victim, and we know *that* is T.W. The second redaction is the source of one of

the two buccal standards received by the lab—the other being petitioner's.

¶ 59    Not to belabor the point, but the DNA report clearly assumed that T.W. was a contributor to the DNA profile. And because the DNA profile was "a mixture of two people," the question was the identity of the "one additional contributor." On that question, the DNA report concluded that it was a male profile "from which [petitioner] cannot be excluded."

¶ 60    In this sense, too, the report does not say or imply that petitioner was *not* a contributor to the DNA profile found in T.W.'s vaginal swab. To the contrary, it says clearly that he "cannot be excluded" as the "additional contributor." It is frivolous to describe this finding as exonerating. It may be true, as petitioner argues at some length, that the number of loci at which the sample matched his own buccal standard made this relatively "weak" DNA evidence. And perhaps that could have supported a reasonable doubt theory at a trial. But it does not contradict T.W.'s testimony in the slightest. It does not show that petitioner is actually innocent.

¶ 61    Whether they are presented under the guise of actual innocence or ineffective assistance of plea counsel, petitioner's underlying allegations have no merit, for the simple reason that the DNA report does not say anything close to what he claims it says. Counsel had no duty to amend the *pro se* petition on this basis.

¶ 62                                        CONCLUSION

¶ 63    For these reasons, we affirm the judgment of the circuit court.

¶ 64    Affirmed.