2023 IL App (1st) 210909-U
No. 1-21-0909

FIRST DIVISION
January 23, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 CR 14004 |
| | ) | |
| MARTEZ SMITH, | ) | Honorable |
| | ) | Adrienne E. Davis, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Justice Hyman concurred in the judgment.
Justice Lavin dissented.

**ORDER**

¶ 1    *Held*:  We reverse the second-stage dismissal of defendant's petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.*), as defendant's postconviction counsel failed to provide the requisite reasonable level of assistance.

¶ 2    Defendant-appellant Martez Smith appeals from the second-stage dismissal of his *pro se* postconviction petition, on the ground that his appointed postconviction counsel failed to render the requisite level of assistance under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). We agree that postconviction counsel failed to render the requisite reasonable level of assistance required by the Act, when she belatedly attempted to orally raise new

constitutional claims without properly presenting them for consideration by the court. We thus reverse and remand for further second-stage proceedings after the appointment of new postconviction counsel.

¶ 3     BACKGROUND[1]

¶ 4     Defendant was charged with counts of attempt first degree murder, aggravated battery with a firearm, and other offenses related to the shooting of Draivon Dixon in Chicago's Euclid Park on the night of July 12, 2008.  Defendant was 17 years old at the time of the shooting.

¶ 5     Before trial, defendant's trial counsel filed a motion to suppress evidence that sought to preclude admission of statements defendant made in police custody after his arrest. The motion alleged that on July 14, 2008, police questioned defendant and obtained an incriminating statement after defendant had invoked his right to counsel and his right to remain silent. The motion did not specify the content of the statement but sought to preclude "any and all statements made by the defendant after his invocation of counsel."

¶ 6     Defense counsel later withdrew the motion to suppress, based upon the State's agreement not to use defendant's incriminating statement in its case in chief. Before trial, defense counsel communicated in open court its understanding "that the State * * * may use that statement in rebuttal for the purposes of impeaching either the defendant's testimony or a potential alibi witness." At that time, the court addressed defendant: "So [if] you choose to testify or alibi witnesses choose to testify, the State may be allowed to introduce statements you made to

---

[1] Additional factual background of trial proceedings can be found in our opinion on direct appeal, *People v. Smith,* 2012 IL App (1st) 102015-U.

authorities regarding your whereabouts at the time of the crime, and that will be given to the jury. Do you understand that?" Defendant answered "Yes."

¶ 7    Defendant's Trial

¶ 8    Trial proceeded on charges of attempt first degree murder and aggravated battery with a firearm. During opening argument, defense counsel told the jury that they would hear testimony from defendant's mother, Nicole Williams, that defendant was home at the time of the shooting. Defense counsel told the jury that Williams would testify that defendant was under a court-ordered curfew and that she made sure he did not violate the curfew.

¶ 9    At trial, the State presented testimony from Dixon and two other eyewitnesses to the shooting, Jason Kemp and Anthony Sayles. Dixon testified that he was 19 years old and was in high school at the time of the shooting. Dixon, Kemp, and Sayles went to Euclid Park about 10:15 p.m. on July 12, 2008. A short time later they were approached by a group of four males, including defendant and someone Dixon recognized from school as Denzel Kennedy.[2] Kennedy and defendant repeatedly asked Dixon if he was in a gang. Dixon said he was not and attempted to walk toward his car. At one point, Dixon turned and saw defendant holding a gun. Dixon heard a shot, felt "something warm going down the side of [his] chest" and fell to the ground. Dixon was treated at a hospital.

¶ 10    On July 13, 2008, Dixon spoke to police and identified defendant in a group of photographs. On July 14, 2008, he went to the police station and identified defendant in a physical lineup.

---

[2] The same individual is sometimes referred to in the record as "Denzel Canady."

¶ 11    Kemp, Dixon's half-brother, similarly testified that he was with Dixon and Sayles when they were approached by a group of males (including defendant), two of whom spoke to Dixon. Kemp saw defendant point a gun at Dixon and begin shooting. Two days later, Kemp identified defendant in a physical lineup at a police station. Sayles similarly testified that he, Dixon and Kemp went to the park at approximately 10 p.m. A short time later, they were approached by a number of males, including defendant. Sayles wanted to leave and was walking toward Dixon's car when he heard shots, turned, and saw defendant shooting at Dixon.

¶ 12    Officer Brandon Rodekohr testified that he spoke to Dixon as part of the investigation into the shooting. Based on information that Dixon provided, Rodekohr prepared a photo array of six photographs.  Dixon subsequently identified defendant's photograph and said he was the shooter. Rodekhohr later arrested Dixon.

¶ 13     Detective James Carlassare testified that each of Dixon, Kemp, and Sayles separately identified defendant in a physical lineup on July 14, 2008.

¶ 14    Defendant proceeded with an alibi defense. Williams testified that she was defendant's mother and that defendant resided with her. At the time of the shooting, defendant was under a court-ordered curfew requiring him to be home between 10 p.m. and 7 a.m. She explained that she took steps to ensure that he did not violate the curfew. She also indicated that pre-trial services would check on defendant a number of times each week, by telephone or in person, to ensure his compliance. She testified that defendant was in her home at the time of the shooting. On cross-examination, Williams acknowledged that a curfew violation was entered against defendant on May 29, 2008. However, she testified the reason was that her telephone was not working when pretrial services tried to call on that date. She maintained that defendant never violated the curfew.

¶ 15   In rebuttal, the State recalled Officer Rodekohr. He testified that after he arrested defendant and gave him *Miranda* warnings, they had a conversation in which defendant related that "he was at Euclid Park shooting hoops when he heard some gunshots." Defendant's statement was not recorded.

¶ 16   The State also recalled Detective Carlassare, who testified that he gave defendant *Miranda* warnings and spoke with him shortly after the physical lineup. Carlassare testified that defendant said he was playing basketball in Euclid Park when he heard shots. Defendant initially said he did not see who was shooting. After Carlassare told defendant he had been identified in the lineup, defendant then said that he was at the park with two individuals, one of whom was the shooter. Carlassare acknowledged that this conversation was not recorded.

¶ 17   The jury found defendant guilty of aggravated battery with a firearm and attempt first degree murder. The jury also made a special finding that defendant discharged a firearm causing great bodily harm to Dixon. The trial court merged the convictions and sentenced defendant to 34 years' imprisonment.

¶ 18   Direct Appeal

¶ 19   In December 2012, this court affirmed defendant's conviction. 2012 IL App (1st) 102015-U. In that order, we rejected defendant's contention that the trial court erred in permitting the State to cross-examine Williams about defendant's prior curfew violations. *Id.* ¶ 52. Separately, we agreed with defendant that the trial court erred in failing to properly admonish and question prospective jurors pursuant to Supreme Court Rule 431(b). *Id.* ¶ 63. However, we determined that this unpreserved error was not first-prong plain error, as the evidence against defendant was not closely balanced. *Id.* at ¶¶ 64-67. We thus affirmed the judgment of the trial court.

¶ 20    <u>Postconviction Proceedings</u>

¶ 21    On May 25, 2015, defendant mailed a motion requesting an extension of time to file a postconviction petition pursuant to the Postconviction Hearing Act (Act), 725 ILCS 5/122-1 *et seq*. That motion was granted on June 30, 2015.

¶ 22    Defendant's handwritten *pro se* petition was filed on August 3, 2015. In the petition, he claimed he was denied effective assistance of trial and appellate counsel in several respects. The *pro se* petition contained several numbered sections. The contentions in section 5, which contained several paragraphs, are most relevant to this appeal.

¶ 23    The first sentence in section 5 stated:

> "Defendant first contends that trial counsel did not meet the *Strickland* standards [sic] when he failed to request the pretrial motion Judge to make sufficiently specific findings of fact in support of the court's suppression order and thereby frustrated the defendant in its's [sic] appeal from that judgment."

¶ 24    In the ensuing paragraphs of section 5, defendant additionally alleged the failure of his trial and appellate counsel to challenge the admissibility of his statements to police officers, on the grounds that he was not given a *Miranda* consent form and that the statements were not recorded. Defendant contended:

> "Defendant additionally argues that in appellate counsel misplaced harmless error analysis he challenges the propriety of the introduction of the statements defendant made to two separate police officers admitting that he was in the park at the time of the shooting

stating that defendant was not given a Miranda consent form to sign and no audio or video recordings of the statement were made. [Citation.] Counsel has caused this claim to be waived where he has simply dumped this issue on the Appellate Court without clear definition, support by pertinent authority or argument, let alone a cohesive argument. Supreme Court Rule 341 requires that the appellant clearly sets out the issues raised and the legal support therefore with relevant authority.

Defendant next argues that appellate counsel failed to raised [sic] the ineffectiveness of trial counsel for his failure to object to the introduction of the statements because defendant was not given a Miranda consent form to sign and no audio or video recording of the statement[s] were made. [Citation.]"

¶ 25    In subsequent sections of the petition, defendant also suggested that (1) appellate counsel failed to raise trial counsel's ineffectiveness in failing to preserve the Rule 431 compliance issue for appellate review; (2) appellate counsel failed to raise trial counsel's "ineffectiveness for failure to ask questions surrounding gang bias during *voir dire*"; (3) trial counsel's opening statement "denied him a fair trial" because counsel's reference to the curfew "opened the door" for the State to reference his curfew violation in Williams' cross-examination; (4) it was "objectively unreasonable" for trial counsel's opening statement to tell the jury that his mother would testify he was at home, since "counsel knew that the defendant had made statements to two separate police officers admitting that he was in the park at the time of the shooting"; and (5) trial counsel should

not have called his mother to testify as an alibi witness without "fully investigat[ing]" her story and the curfew records.

¶ 26    In a separate section of the petition, defendant claimed trial counsel caused him to "involuntarily waive his right to testify" by "incorrectly advising" him. Defendant attached an affidavit in which he stated that his trial counsel "misinformed" him that if he testified, the jury would hear gang-related evidence and would learn about a prior offense. Defendant averred that he twice told counsel he wanted to testify, but eventually "my mother told me not to testify and listen to my attorney." Defendant separately alleged the trial court denied his right to confront witnesses against him by refusing to allow the cross-examination of Dixon and Sayles "concerning their gang membership."

¶ 27    On November 2, 2015, the petition was advanced for second-stage proceedings.[3] Defendant's appointed postconviction counsel first appeared before the court on January 5, 2016. On August 23, 2016, postconviction counsel told the court she had spoken to defendant by phone but requested more time to review his case. The record reflects a number of continuances over the following months.

¶ 28    On July 20, 2017, approximately one and a half years after her first appearance in this matter, defendant's postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c), in which she represented:

> "I have consulted with Petitioner, MARTEZ SMITH, by phone,
>
> mail, electronic means or in person to ascertain his contentions of

---

[3] The record includes a "Criminal Disposition Sheet" from that date stating the petition was "[d]ocketed for 2nd stage hearing."

deprivation of constitutional rights; I have examined the record of proceedings at the trial; and I have not made any amendments to the *pro se* Petition(s) previously filed necessary for an adequate presentation of Petitioner's contentions. The *pro se* Petition(s) previously filed that is an adequate presentation of Petitioner's contentions."

¶ 29    On June 11, 2018, the State filed a motion to dismiss the *pro se* petition. As a threshold issue, the State urged that the petition was untimely and defendant failed to establish a lack of culpable negligence to excuse the untimeliness. Regarding the petition's allegation that trial counsel failed to request specific findings of fact in an order on the motion to suppress, the State pointed out that there was no such order because trial counsel withdrew the motion.

¶ 30    On October 2, 2018, appointed postconviction counsel told the court that defendant wanted to hire private counsel. However, the record reflects that the same attorney remained as defendant's postconviction counsel for the remainder of postconviction proceedings.

¶ 31    In April 2019, defendant filed a response to the State's motion. The response urged that defendant was not "culpably negligent" for the late filing, referencing a supporting affidavit in which defendant described how his efforts to file the petition were delayed by multiple lockdowns at his prison. Elsewhere in the response, defendant argued forfeiture should not apply to his claims, as forfeiture does not apply where "fundamental fairness" requires.

¶ 32    On June 4, 2019, defendant moved for leave to file an affidavit from his mother, Williams, as an exhibit that was inadvertently omitted from the petition. In the affidavit, Williams stated that trial counsel told her defendant should not testify "because it will negatively affect the defense that

Denzel Canady shot Draivon Dixon and the State will mis-use the gang information against [defendant] and show he use[s] guns because he w[as] out on bond for unlawful use of a weapon." She stated that she later told defendant "not to testify and go with his lawyer['s] plan."

¶ 33    On June 12, 2019, defendant filed a "motion for leave to file a supplemental petition," to include Williams' affidavit from the original petition. Postconviction counsel did not otherwise amend the *pro se* petition.

¶ 34    On July 17, 2019, the State filed a motion to dismiss the supplemental petition.

¶ 35    On August 15, 2019, the court heard argument on the State's motion to dismiss. The State reiterated that, insofar as the petition claimed trial counsel should have sought more specific findings in an order on the motion to suppress, there was no such order because the motion was withdrawn.

¶ 36    In her argument, defendant's postconviction counsel included multiple assertions that were not in the *pro se* petition:

> "[Y]our Honor, *trial counsel was ineffective for not proceeding with the motion to suppress statements* which prejudiced the petitioner because the failure inhibited him from testifying. This was not trial strategy, but ineffective assistance of counsel.
>
> Trial counsel was also ineffective for arguing an alibi defense in opening argument regarding petitioner's whereabouts where his alibi witness was impeached by probation curfew records.

Also trial counsel was ineffective for compelling him not to testify and basically trial counsel was ineffective for failing to put on a defense.

*Also petitioner was 17 years old and no guardian was present when he was questioned, which violated his due process rights*.

Regarding the timeliness issue, petitioner had repeated lock downs at his correctional facilities. Additionally, he's not a lawyer, did not have an attorney's assistance with his *pro se* petition. And fundamental fairness requires that his petition not be dismissed on this basis.

Petitioner has made a substantial showing of ineffective assistance of counsel and appellate counsel thereby re[quiring] a third stage evidentiary hearing." (Emphases added.)

¶ 37    Over the next two years, the parties appeared before multiple judges pending a ruling on the State's motion to dismiss. Although the Hon. Diane G. Cannon presided over defendant's trial and the oral argument on the State's motion to dismiss the postconviction petition, the Hon. Adrienne E. Davis ruled on that motion after reviewing relevant filings and transcripts.

¶ 38    On July 6, 2021, the trial court granted the State's motion to dismiss the petition. The court issued an order in which it found that defendant was not culpably negligent for the delay in filing the petition, but that each of the petition's claims lacked merit. On July 16, 2021, defendant filed a notice of appeal.

¶ 39    ANALYSIS

¶ 40    On appeal, defendant seeks reversal of the second-stage dismissal of his *pro se* petition on the ground that postconviction counsel failed to render a reasonable level of assistance pursuant to the Act. He first contends that postconviction counsel was unreasonable by failing to amend the *pro se* petition to remove the "meritless claim" referencing a non-existent suppression order. He also suggests counsel rendered unreasonable assistance when she orally asserted two "entirely new claims" that she failed to include in an amended petition, despite having ample time to investigate and properly assert them in writing.

¶ 41    With respect to the first of those two new claims, defendant contends it was unreasonable for postconviction counsel not to amend the petition to argue that trial counsel was ineffective for withdrawing the motion to suppress. Defendant points out that postconviction counsel made that assertion to the court at the August 2019 oral argument, yet this was her first mention of that possible claim, despite having represented defendant for the preceding three and a half years.

¶ 42    In the same manner, defendant also urges that postconviction counsel failed to provide reasonable assistance when she made no written amendment corresponding to her assertion at oral argument that defendant "was 17 years old and no guardian was present when he was questioned, which violated his due process rights." Defendant emphasizes that this brief statement was postconviction counsel's first and only mention of this issue to the court during the entirety of her representation. Based on these alleged failures by postconviction counsel, defendant requests we reverse and remand for further second-stage proceedings upon appointment of new postconviction counsel. For the following reasons, we agree with defendant that postconviction counsel's conduct did not demonstrate the requisite reasonable level of assistance.

¶ 43    The Post-Conviction Hearing Act (725 ILCS /122-1 *et seq*.) provides a " 'remedy for defendants who have suffered a substantial violation of their constitutional rights at trial." *People v. Milam*, 2012 IL App (1st) 100832, ¶ 20 (quoting *People v. Edwards*, 197 Ill. 2d 239, 243-44) (2001)). At the first stage of proceedings under the Act, "the trial court has 90 days to review a defendant's petition and may summarily dismiss the petition if the court finds it frivolous and patently without merit. [Citations.]" *Id.*  If the petition is not dismissed within 90 days, it must be docketed for further consideration. 725 ILCS 5/122-2.1(b) (West 2020).

¶ 44    Here, defendant's petition proceeded to the second stage of proceedings under the Act, at which counsel may be appointed for an indigent defendant. 725 ILCS 5/122-4 (West 2020). "The right to postconviction counsel is statutory, not constitutional. [Citations.]" *Milam*, 2012 IL App (1st) 100832, ¶ 21. Because "counsel is afforded in collateral proceedings under the Act only as a matter of legislative grace", "criminal defendants seeking relief in postconviction proceedings have no constitutional right to counsel, effective or otherwise." *People v. Custer*, 2019 IL 123339, ¶ 30; see also *People v. Flores*, 153 Ill. 2d. 264, 276 (1992) ("Because the right to counsel in post-conviction proceedings is derived from statute rather than the Federal or State Constitutions" a petitioner "cannot claim sixth amendment ineffective assistance of counsel in such proceedings.")

¶ 45    "[P]etitioners are only entitled to the level of assistance provided for by the [Act]." *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). "The required  quantum of assistance has been judicially deemed to be a 'reasonable level,' a standard that is significantly lower than the one mandated at trial by our state and federal constitutions." *Custer,* 2019 IL 123339, ¶ 30; see also *People v. Kuehner*, 2015 IL 117695, ¶ 15 (the required reasonable level of assistance is "lower than the constitutionally guaranteed level of assistance" at trial.)

¶ 46    "To assure the reasonable assistance required by the Act, Supreme Court Rule 651(c) imposes specific duties on postconviction counsel. [Citation.]" *People v. Perkins*, 229 Ill. 2d 34, 43 (2007).  The Rule states:

> "Upon the timely filing of a notice of appeal in a postconviction proceeding, if the trial court determines that the petitioner is indigent, the procedures for appointment of counsel and provision of the report on proceedings shall be governed by Rule 607. In a postconviction proceeding, the appellant or appellant's counsel shall, upon written request, be provided the postconviction report of proceedings and any relevant report of proceedings not previously provided to the appellant or appellant's counsel.

> The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

The "primary purpose" of the Rule "is to ensure that counsel shapes the petitioner's claims into proper legal form and presents those claims to the court." *Kuehner*, 2015 IL 117695, ¶ 20 (quoting *Perkins*, 229 Ill. 2d at 43-44); see also *Milam*, 2012 IL App (1st) 100832, ¶ 33 ("Rule 651(c)

requires that postconviction counsel make any amendments to the *pro se* petition necessary to adequately present the defendant's contentions. [Citations.] To that end, postconviction counsel must shape the defendant's *pro se* claims into 'appropriate legal form.' " (quoting *People v. Johnson*, 154 Ill. 2d 227, 237-38 (1993)).

¶ 47     Our supreme court has emphasized that under Rule 651(c), "post-conviction counsel is only required to investigate and properly present the *petitioner's* claims." (Emphasis in original). *People v. Pendleton*, 223 Ill. 2d 458, 475 (2006) (quoting *People v. Davis*, 156 Ill. 2d 149, 164 (1993)); see also *Custer*, 2019 IL 123339, ¶ 32 (postconviction counsel "are required only to certify that they have 'consulted with the petitioner * * *', 'examined the record' as needed to shape the defendant's *pro se* claims, and 'made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation' of those claims (quoting Ill. S. Ct. R. 651(c) (eff. July 1, 2017)). Accordingly, "[u]nder Rule 651(c) there is no requirement that postconviction counsel must amend a defendant's *pro se* petition or scour the record to uncover claims that were not raised by the defendant. [Citations.]" *Milam,* 2012 IL App (1st) 100832, ¶ 33 (quoting *Johnson*, 154 Ill. 2d at 237-38). While postconviction counsel "may raise additional issues if he or she so chooses, there is no obligation to do so." *Pendleton*, 223 Ill. 2d at 476.

¶ 48     Further, Rule 651(c) "does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf. If amendments * * * would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 23 (quoting *People v. Greer*, 212 Ill. 2d 192, 205 (2004)).

¶ 49     Counsel's compliance with Rule 651(c) is "mandatory" and "may be shown by a certificate filed by the petitioner's attorney." *Perkins*, 229 Ill. 2d at 50. Completion of a certificate raises a

rebuttable presumption that counsel complied with the Rule but is not "conclusive of compliance." *Id.* at 53. If postconviction counsel filed a certificate, "[i]t is defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c). [Citation.]" *Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 50     In this case, postconviction counsel filed a Rule 651(c) certificate, "triggering the presumption of compliance with the rule." *Id.*, ¶ 31. We review *de novo* the question of whether an attorney complied with Rule 651(c). *Id.* ¶ 17.

¶ 51     Significantly, much of the parties' arguments in their briefs and at oral argument assume compliance with Rule 651(c) is conclusive proof that postconviction counsel rendered the requisite "reasonable assistance" under the Act. We believe this view mistakenly oversimplifies the relationship between the specific duties set forth in the Rule and the broader responsibility to provide reasonable assistance under the Act. While there is ample case law discussing counsel's duties under Rule 651(c) and the presumption of compliance with the Rule arising from completion of a Rule 651(c) certificate, supreme court precedent does *not* indicate that compliance with Rule 651(c) duties necessarily means that counsel rendered the requisite "reasonable" assistance in the course of his or her representation. Indeed, our supreme court recently recognized: "Our case law does not treat Rule 651(c) as the exclusive mechanism for ensuring reasonable assistance. [Citations]" *People v. Smith*, 2022 IL 126940, ¶ 25; see also *People v. Owens*, 139 Ill. 2d 351, 361 (1990) (stating that "section 122-4 of the Post-Conviction Hearing Act and Rule 651 together ensure that post-conviction petitions will receive a reasonable level of assistance by counsel in post-conviction proceedings."). This precedent indicates that, although postconviction counsel's compliance with Rule 651(c) is always required, it is not necessarily sufficient to establish that

counsel rendered the requisite level of reasonable assistance. In other words, postconviction counsel may satisfy the limited duties of Rule 651(c) yet otherwise fail to render reasonable assistance in other aspects of his or her representation.

¶ 52    With these principles in mind, we turn to defendant's specific claims of unreasonable assistance. There are essentially three ways in which defendant now asserts that postconviction counsel failed to give the requisite reasonable assistance under the Act: (1) counsel failed to amend the *pro se* petition's meritless allegation referencing a non-existent "suppression order"; (2) counsel failed to amend the petition to add the new claim (first mentioned at oral argument) that trial counsel was ineffective for withdrawing the motion to suppress; and (3) counsel failed to amend the petition to add a new claim corresponding to her assertion at oral argument that defendant "was 17 years old and no guardian was present when he was questioned, which violated his due process rights."

¶ 53    For the reasons that follow, we find that the latter two arguments are convincing and require reversal and remand. The record shows that postconviction counsel belatedly attempted to assert, in conclusory fashion, two new substantive claims at oral argument. This was counsel's first mention of either claim, despite having filed a certificate over two years earlier stating she had reviewed the record but found no need to amend the petition. We recognize that Rule 651(c) imposes no specific obligation with respect to new claims not included in the *pro se* petition, and that counsel in this case completed a Rule 651(c) certificate. Nevertheless, we cannot say that counsel's conduct demonstrated "reasonable" assistance. To the contrary, the record indicates a disturbing likelihood that she identified two new issues she believed had arguable merit, yet she failed to properly present them for the court's consideration. Alternatively, she may have simply

asserted the claims in conclusory fashion at oral argument, without adequate factual investigation or legal research to support them. In any event, the record shows that postconviction counsel did not render a "reasonable" level of assistance, at least with respect to either of the new claims. This requires reversal, regardless of whether counsel otherwise complied with Rule 651(c).

¶ 54    Postconviction Counsel Was Unreasonable In Belatedly Asserting a Claim That Trial

Counsel Was Ineffective for Withdrawing the Motion to Suppress

¶ 55    First, we agree with defendant's contention that postconviction counsel was unreasonable because, "after examining the record, post-conviction counsel should have amended the petition to argue that defense counsel was ineffective for withdrawing the motion to suppress in the first place." Defendant points out that his trial counsel's decision to withdraw the motion undermined his alibi defense, insofar as it allowed the State to impeach his mother's testimony with defendant's post-arrest statements to police admitting he was in the park at the time of the shooting. He argues that, since trial counsel put on an alibi defense, he should have proceeded with the motion to suppress that, if granted, could have precluded the "fatal impeachment of his alibi witness." Defendant suggests that postconviction counsel was unreasonable for failing to amend the petition to add a corresponding claim. He emphasizes that postconviction counsel was undoubtedly aware of this potential claim, since she asserted at the August 2019 oral argument that "trial counsel was ineffective for not proceeding with the motion to suppress statements." Defendant points out that, despite having represented defendant for the prior three and a half years, postconviction counsel (1) made no prior mention of the issue in an amended petition and (2) provided no supporting law or facts when she first mentioned it at oral argument on the State's motion to dismiss. Defendant posits that to "offhandedly reference [this issue] for the first and only time in court, without

fleshing out her argument and without including it in [defendant's] written petition, was unreasonable assistance."

¶ 56     On this point, the State emphasized in its brief and at oral argument that under Rule 651(c), postconviction counsel is only required to properly present claims raised by the petitioner and is not required to raise *new* issues.[4] At oral argument, the State contended that compliance with Rule 651(c) is equivalent to providing the requisite "reasonable assistance" under the Act. Thus, the State essentially argues that Rule 651(c) controls the outcome of this appeal.

¶ 57     In his reply brief and at oral argument, defendant concedes that the issue of trial counsel's failure to withdraw the motion to suppress was a "new" claim not contained in his *pro se* petition. Nevertheless, he contends that postconviction counsel acted unreasonably by merely stating the claim for the first time at oral argument, without attempting to "flesh out the claim" or include it in an amended petition. That is, defendant asserts that postconviction "counsel provided unreasonable assistance because she raised this new claim but failed to take the necessary steps to do so properly."

¶ 58     At this point, we note our disagreement with the dissent's suggestion that postconviction counsel's reference at oral argument to the motion to suppress was *not* a new claim but instead was an attempt to argue defendant's *pro se* allegations of trial counsel's ineffectiveness. We acknowledge that it is impossible to know exactly what postconviction counsel was thinking when she argued that "trial counsel was ineffective for not proceeding with the motion to suppress

---

[4] At oral argument before this court, the State alternatively suggested that postconviction counsel's remarks may not have indicated an intent to raise any new claims, but that perhaps postconviction counsel was simply "inarticulate" in her oral argument on the State's motion to dismiss. That suggestion is contradicted by the record, which makes clear that postconviction counsel orally raised new contentions that were simply not contained anywhere in the defendant's *pro se* petition.

statements which prejudiced the petitioner because the failure inhibited him from testifying." However, the *pro se* petition simply never referenced a "motion to suppress," other than to state that trial counsel "failed to request the pretrial motion Judge to make sufficiently specific findings of fact in support of the Court's suppression order." Of course, there was no such suppression order and so (as the dissent elsewhere acknowledges) that particular *pro se* contention is meritless. The dissent is correct in noting that the petition referred to trial counsel's "failure to object to the introduction of the statements," yet that *pro se* claim specified that it was based on the fact that "defendant was not given a Miranda consent form" and that there were no audio or video recordings of the statements. That *pro se* claim is different from postconviction counsel's oral contention that trial counsel should have maintained the motion to suppress based on defendant's prior invocation of his right to remain silent and his right to counsel. And while the *pro se* petition alleged that trial counsel "incorrectly advis[ed]" him and his mother regarding his right to testify, that portion of the petition made no reference to counsel's decision to withdraw the motion to suppress. The *pro se* petition did not claim, as postconviction counsel orally argued, that the withdrawal of the motion to suppress "inhibited him from testifying." Thus, we remain convinced (and neither party has disputed) that postconviction counsel sought to assert a new claim regarding withdrawal of the motion to suppress.

¶ 59    We recognize that Rule 651(c) does not require postconviction counsel to raise new claims. Our supreme court has emphasized that Rule 651(c) imposes "limited duties" that concern presentation of the petitioner's claims. *Custer*, 2019 IL 123339, ¶ 32 (postconviction counsel "are required only to certify that they have 'consulted with the petitioner * * *,' 'examined the record' as needed to shape the defendant's *pro se* claims, and 'made any amendments to the petitions filed

*pro se* that are necessary for an adequate presentation' of those claims."); *Pendleton*, 223 Ill. 2d at 475 (2006) (" '[P]ost-conviction counsel is only required to investigate and properly present the *petitioner's* claims.' " (Emphasis in original) (quoting *People v. Davis*, 156 Ill. 2d 149, 164 (1993)). Similarly, we recognize that postconviction counsel is not required to "scour the record to uncover claims that were not raised by the defendant." *Milam*, 2012 IL App (1st) 100832, ¶ 33.

¶ 60    Nevertheless, although Rule 651(c) does not *require* counsel to raise new claims, that does not preclude scrutiny of postconviction counsel's attempt to do so. We emphasize that the governing inquiry under the Act is whether counsel rendered a " 'reasonable' level of assistance." *Perkins*, 229 Ill. 2d at 42. At oral argument, the State suggested that compliance with Rule 651(c) is equivalent to providing reasonable assistance. However, our supreme court has clarified that Rule 651(c) is *not* "the exclusive mechanism for ensuring reasonable assistance." *Smith*, 2022 IL 126940, ¶ 25. Thus, compliance with Rule 651(c)—whose duties concern presentation of the petitioner's *pro se* claims—does not foreclose the possibility that postconviction counsel otherwise failed to render a reasonable level of assistance with respect to new claims.

¶ 61    We recognize that the statutorily-required "reasonable" level of assistance is "significantly lower than the one mandated at trial by our state and federal constitutions." *Custer,* 2019 IL 123339, ¶ 30. We also recognize that completion of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance.  *Profit*, 2012 IL App (1st) 101307, ¶ 19. Nevertheless, the record here shows that postconviction counsel acted unreasonably in attempting to belatedly assert a new claim. At the August 2019 hearing, postconviction counsel raised a new claim that "trial counsel was ineffective for not proceeding with the motion to suppress." Plainly, counsel thought this new claim had at least some arguable

merit, or she would have not mentioned it at all. Yet, there is no reasonable explanation why she raised it for the first time at that point, which was approximately three and a half years after her appointment as postconviction counsel, and approximately two years after representing to the court in her Rule 651(c) certificate that she had reviewed the record and conferred with defendant. Apparently, at some point in her representation she came to believe this was a potentially viable constitutional claim. Yet, inexplicably, she never attempted to properly raise that claim by submitting an amended petition. And when she did mention it belatedly at oral argument, she offered no supporting facts or case law. Nor did she ask for an opportunity at that late point to submit an amended petition or supplemental briefing to support the new claim. Finally, counsel made no further mention of the claim in a motion to reconsider the dismissal order.[5]

¶ 62     Even applying a minimal standard of competency, the record compels the conclusion that counsel was unreasonable in attempting to raise this new substantive claim for the first time at oral argument. We note that postconviction counsel has been found unreasonable when counsel fails to adequately preserve one of defendant's *pro se* arguments. See *People v. Turner*, 187 Ill. 2d 404, 414 (1999) (postconviction counsel failed to amend a *pro se* petition to add allegation of ineffective assistance of appellate counsel to avoid waiver of underlying claim); *People v. Schlosser*, 2012 IL App (1st) 092523, ¶ 25 (postconviction counsel's oral assertion of appellate counsel's ineffectiveness at argument on State's motion to dismiss did not function to amend petition to avoid dismissal on waiver); *People v. Kirk*, 2012 IL App (1st) 101606, ¶ 31 (relying on *Schlosser*

---

[5] At oral argument, the State pointed out that after the trial court granted the State's motion to dismiss, postconviction counsel failed to point out to the court that the dismissal order made no mention of the new claims that she sought to raise at oral argument. The State suggested this indicates that counsel did not, in fact, intend to raise any new issues. However, we think it is just as likely that this simply shows postconviction counsel's repeated failure to make reasonable efforts to properly bring the new claims to the court's attention.

to find postconviction counsel rendered unreasonable assistance by failing to amend petition to include claim of ineffective assistance of appellate counsel that postconviction counsel first raised at oral argument). We recognize that these cases discussed counsel's duty to adequately present the petitioner's claims, which is specifically set forth in Rule 651(c). Nonetheless, they support the more general principle that when postconviction counsel undertakes to present a claim, he or she must do so in a procedurally correct manner. Indeed, we fail to see how counsel can be considered to have rendered "reasonable" assistance with respect to a new claim, if counsel does not present that claim in a way so that it can be properly considered and ruled upon by the court.

¶ 63    In this case, postconviction counsel inexplicably attempted to raise at oral argument a new claim of trial counsel's ineffectiveness, having failed to present it in three-plus years of postconviction representation. Regardless of whether such a claim would have ultimately been found meritorious had it been properly presented, the haphazard way in which it was raised is clear evidence that postconviction counsel did not render the reasonable level of assistance required by the Act.

¶ 64    <u>Postconviction Counsel's Assertion of a New Due Process Claim at Oral Argument</u>

¶ 65    We similarly agree with defendant's contention that postconviction counsel rendered unreasonable assistance by attempting to raise a second new substantive claim for the first time at oral argument, when she told the court that "petitioner was 17 years old and no guardian was present when he was questioned, which violated his due process rights." Defendant points out that counsel did not include this claim in a written amendment and that she did not provide "additional legal or factual support" for a due process claim, either orally or in writing. He asserts that

postconviction counsel's attempt to raise a due process issue through a single sentence at oral argument constituted unreasonable assistance.

¶ 66    In response, the State claims that the record "does not demonstrate that this one utterance was an attempt to raise a new post-conviction claim." The State otherwise emphasizes the previously-mentioned precedent establishing that the requisite level of assistance under the Act is less than the constitutional standard for trial counsel, and that postconviction counsel is not obligated to raise new claims.

¶ 67    Nevertheless, the record convinces us that postconviction counsel acted unreasonably with respect to this attempted due process claim, for largely the same reasons discussed with counsel's failed attempt to assert a new claim of trial counsel's ineffectiveness. First, it is clear that counsel did, in fact, attempt to raise a new due process claim based on defendant's age and lack of a guardian during police questioning. Contrary to the State's suggestion at oral argument, postconviction counsel's comment cannot simply be disregarded as an inarticulate attempt to argue a pre-existing *pro se* claim. The *pro se* petition made no mention of the fact that defendant was 17 years old at the time of his arrest, nor did it mention whether he had a parent, guardian or other concerned adult present during questioning by police. Thus, it is plain that postconviction counsel sought to raise a new due process argument at the hearing on the State's motion to dismiss.

¶ 68    We recognize that since it was a new claim, postconviction counsel did not have an obligation to raise it, at least not under the text of Rule 651(c). Nonetheless, counsel was still obligated by the Act to give a "reasonable" level of assistance, including with respect to any new claim that she elected to raise in her professional judgment. It is clear that she did not do so.

¶ 69     Apparently, counsel thought there was some arguable merit to the new "due process" claim, or she would not have brought it to the court's attention at oral argument.[6] Nevertheless, she inexplicably failed to make any prior mention of this claim, through written amendment or otherwise, at any point in *over three years* of representing defendant, during which she certified that she had met with defendant and examined the trial record. And when she finally did try to raise the claim, she did not attempt to cite any legal authorities or seek leave to amend the petition. We believe that "reasonable" representation entails that, if counsel wishes to present a new claim, he or she must so in a procedurally correct manner, *i.e.*, through a written amendment. See *People v. Rodriguez*, 2015 IL App (2d) 130994 (reversing and remanding where postconviction counsel had on several prior occasions stated to the court there was an issue of defendant's fitness to stand trial, yet inexplicably failed to present a corresponding claim in an amended petition).[7] Clearly, counsel did not act reasonably in this case, with respect to either of the new claims first mentioned at oral argument, as they were never properly presented for consideration by the trial court.

---

[6]     We note that the claim appears *not* to have had merit, because at the time of defendant's 2008 arrest, the Juvenile Court Act applied only to minors under the age of 17. See 705 ILCS 405/5-120 (West 2008). Defendant had already reached age 17 by the time of his arrest. Effective January 1, 2014, the Juvenile Court Act was amended to apply to minors under age 18, but the amendment specified that it was not retroactive. 705 ILCS 405/5-120 (West 2014); *People v. Richardson*, 2015 IL 118255(rejecting defendant's challenge to provision of the amendment that excluded application of the Juvenile Court Act to 17-year-olds who allegedly committed offenses before the amendment's effective date.) Postconviction counsel's apparent failure to research this issue only further convinces us that her representation did not meet the minimal level of reasonable assistance.

[7]     At oral argument, the State cited *Rodriguez* to argue that the record must show something more than postconviction counsel's statements at oral argument before we may conclude that postconviction counsel actually intended to raise a new claim, as opposed to merely making an inartful argument. We disagree where, as here, the record makes plain that counsel referenced specific facts in support of a "due process" argument that were contained nowhere in the *pro se* petition. Indeed, the fact that postconviction counsel did not bring a potential due process claim to the court's attention at any other point simply supports the conclusion that she did not render reasonable assistance with respect to this new claim.

¶ 70    Response to Dissent

¶ 71    Before we conclude, we pause to address the dissent's contentions that, notwithstanding any unreasonable conduct by postconviction counsel, reversal is not warranted because neither of the claims at issue had merit. With respect to the first claim, the dissent reasons that while postconviction counsel could have amended the petition to "more clearly state" a claim of ineffective assistance pertaining to the withdrawal of the motion to suppress, we should not find this was unreasonable because the underlying ineffective assistance of trial counsel claim lacks merit. Specifically, the dissent concludes that there was no potentially viable ineffective assistance claim based on trial counsel's withdrawal of the motion to suppress, because even a successful motion would make no difference in the trial outcome, given the other evidence of defendant's guilt.[8]

¶ 72    With respect to postconviction counsel's "due process" argument, the dissent does not dispute that postconviction counsel tried to assert a new claim based on the fact that defendant was 17 years old without a guardian present when he was questioned. However, the dissent reasons that because that new claim was meritless, it does not form a basis to reverse due to postconviction counsel's unreasonable assistance.

¶ 73    We disagree with the dissent's suggestion that we cannot reverse due to postconviction counsel's unreasonable assistance absent a showing that defendant was prejudiced, *i.e.*, that one

---

    [8]    The dissent also points out that the motion to suppress stated that the defendant invoked his *Miranda* rights on July 14, 2008, whereas Officer Rodekohr testified that defendant made an incriminating statement shortly after his arrest the previous day, July 13. Thus, the dissent assumes that the motion only sought to suppress the subsequent statement to Officer Carlassere after the physical lineup. However, because the motion was withdrawn, defendant never had an opportunity to testify whether he invoked his right to remain silent and right to counsel immediately after his arrest, or if he only did so the following day. That is, we recognize the distinct possibility that trial counsel erred in drafting the motion to withdraw so as not to encompass all post-arrest statements.

of the underlying claims actually had merit. Our supreme court has rejected the need for such a showing by specifically declining to hold that postconviction counsel's failure to comply with Rule 651(c) may be excused as "harmless error" where the underlying claim lacks merit. *People v. Suarez*, 224 Ill. 2d 37 (2007). *Suarez* and the other supreme court precedent cited therein indicate that, where postconviction counsel has not complied with Rule 651(c) or otherwise given the reasonable level of assistance required by the Act, remand is appropriate regardless of the merits of the claims.

¶ 74    In *Suarez*, defendant filed a *pro se* petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401) asserting that his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Suarez*, 224 Ill. 2d at 40-41. The circuit court treated the filing as a postconviction petition under the Act and appointed counsel. Postconviction counsel did not complete a Rule 651(c) certificate but filed a supplemental petition that added a new claim along with the original *Apprendi* claim. *Id*. at 41. After the circuit court granted the State's motion to dismiss, defendant on appeal sought remand on the ground that postconviction counsel "failed to file a certificate of compliance and the record failed to demonstrate compliance." *Id*. at 41. The appellate court "concluded that the failure to comply was harmless error because defendant's postconviction claims were without merit as a matter of law." *Id.*

¶ 75    Our supreme court, however, concluded that remand was warranted regardless of whether the *pro se* or supplemental petitions raised potentially meritorious issues. The first portion of our supreme court's analysis rejected the State's contention that the record showed postconviction counsel's compliance with Rule 651(c), notwithstanding counsel's failure to file a certificate. *Id*. at 43-44. The court found that, although postconviction counsel filed a supplemental petition, this

did not give rise to a presumption of compliance and "nothing in the supplemental petition suggests that counsel consulted with defendant in preparing the petition." *Id*. at 44.

¶ 76    Our supreme court then turned to the appellate court's conclusion that postconviction counsel's failure to comply with Rule 651(c) was "harmless error" because the petition's claims were meritless. *Id.* The *Suarez* court  proceeded to reject the "harmless error" approach, explaining that remand was required regardless of whether the petition's underlying claims were meritorious. Citing several prior supreme court decisions, *Suarez* explained: "This court has consistently held that remand is required where postconviction counsel failed to fulfill the duties of consultation, examining the record, and amendment of the *pro se* petition, regardless of whether the claims raised in the petition had merit. [Citations.]" *Id.* at 47.

¶ 77    The supreme court noted that, in 1969, it had "rejected the State's argument that the circuit court properly dismissed the petition because its allegations were insufficient to raise a constitutional issue and it could not be made sufficient through amendment." *Id.* at 47 (citing *People v. Jones*, 43 Ill. 2d 160, 162 (1969)). The supreme court in *Jones* stated: "We have held it to be error to dismiss a post-conviction petition on the pleadings * * * where there has been inadequate representation by counsel, though the [*p*]*ro se* petition itself fails to present a substantial constitutional claim. [Citations.]" *Jones*, 43 Ill. 2d at 162.

¶ 78    Our supreme court in *Suarez* also noted that, in 1999, it rejected a similar argument by the State that prejudice was required before reversing due to postconviction counsel's conduct:

> "[I]n *People v. Turner*, 187 Ill. 2d 406 (1999), this court rejected the
>
> State's argument that the postconviction petitioner was not
>
> prejudiced by his counsel's deficiencies because the claims in the

*pro se* petition lacked merit. We held that, '[o]n a more fundamental level, it is improper to affirm the dismissal of a post-conviction petition when this court finds that post-conviction counsel's performance was so deficient that it amounts to virtually no representation at all.' *Turner*, 187 Ill. 2d at 415-16. Counsel in that case had not consulted with petitioner, examined pertinent portions of the record, or amended the *pro se* petition. This court rejected the State's harmless error argument, refusing to speculate on whether the circuit court would have dismissed the petition without an evidentiary hearing had counsel adequately performed his duties under Rule 651(c). [Citation.]" *Suarez,* 224 Ill. 2d at 48.

¶ 79    The *Suarez* court noted that the supplemental petition filed by postconviction counsel contained a new claim whose merits were not discussed by the parties' briefs. *Id.* at 51. Nevertheless, our supreme emphasized that the potential merit of any claim was irrelevant:

"Our analysis * * * does not depend upon whether the *pro se* or supplemental petition in this case did nor did not contain potentially meritorious issues. *Our Rule 651(c) analysis has been driven, not by whether a particular defendant's claim is potentially meritorious, but by the conviction that where postconviction counsel does not adequately complete the duties mandated by the rule, the limited right to counsel conferred by the Act cannot be fully realized.* [Citations.] We have consistently declined the State's invitation to

excuse noncompliance with the rule on the basis of harmless error."

(Emphasis added.) *Id*. at 51.

*Suarez* "decline[d] to hold that noncompliance with Rule 651(c) may be excused on the basis of harmless error," stating "[s]uch compliance must be shown regardless of whether the claims made in the *pro se* or amended petition are viable." *Id*. at 52 (remanding to the circuit court "for the purpose of demonstrating compliance with Rule 651(c)).")

¶ 80    We think *Suarez* makes clear the supreme court's view that, once it has been determined that postconviction counsel has not complied with Rule 651(c) or otherwise rendered reasonable assistance require by the Act, remand is required regardless of whether the underlying claims had merit.

¶ 81    As the dissent notes, certain decisions of our court have limited *Suarez*'s application based on the fact that counsel in *Suarez* did not file a Rule 651(c) certificate giving rise to a rebuttable presumption of compliance. See, *e.g.*, *People v. Landa*, 2020 IL App (1st) 170851, ¶¶ 56-58; *People v. Gallano*, 2019 IL App (1st) 160570, ¶¶ 29-30; *People v. Profit*, 2012 IL App (1st) 101307, ¶¶ 20-23. Those decisions have reasoned that, where postconviction counsel has completed a Rule 651(c) certificate, whether petitioner's underlying *pro se* claims "had merit is crucial to determining whether counsel acted unreasonably by not filing an amended petition." *Gallano*, 2019 IL App (1st) 160570, ¶ 30 (quoting *Profit*, 2012 IL App 101307, ¶ 23). In other words, they suggest that if a Rule 651(c) certificate has been completed, "the defendant must show not only how the [postconviction] attorney's performance was deficient or unreasonable but also what prejudice resulted from that deficiency." *Landa*, 2020 IL App (1st) 170851, ¶ 58. We disagree with this proposition. Although we recognize that a Rule 651(c) certificate raises a rebuttable

presumption of reasonable assistance, *once that presumption has been rebutted* (as we believe it was here)*,* we do not see why the existence of a Rule 651(c) certificate additionally requires a defendant to show "prejudice" based on the merits of the underlying claims.

¶ 82    We note that we are not bound to follow other decisions of this district. See *O'Casek v. Children's Home and Aid Society*, 229 Ill. 2d 421, 440 (2008) ("[T]he opinion of one district, division, or panel of the appellate court is not binding on other districts, division, or panels. [Citation.]") We respectfully depart from the above-referenced decisions, insofar as they decline to apply *Suarez* or hold that counsel cannot be found unreasonable unless there was some merit to the underlying *pro se* allegations. We are unaware of any supreme court precedent requiring defendant to show that "prejudice" resulted from postconviction counsel's unreasonable assistance, based on the merits of an underlying *pro se* claim or a claim added by counsel.[9] That is, we believe that *Suarez* is the controlling authority.

¶ 83    Notably, *Suarez*'s analysis does not suggest that its rejection of the State's "harmless error" argument depends on whether counsel completed a Rule 651(c) certificate. Nothing in the *Suarez* decision explicitly limited its holding in this manner. Nor did *Suarez* suggest that a defendant is required to show that "prejudice" resulted from his postconviction counsel's unreasonable assistance. Rather, *Suarez* makes clear that, once it has been determined that postconviction counsel failed to fulfill his or her duties, the State cannot resort to a "harmless error" argument to avoid remand by arguing that the substantive claims were meritless.

---

[9] Our supreme court is considering an appeal in which defendant contends that his appointed postconviction counsel failed to provide reasonable assistance by failing to plead an essential element of a claim that counsel added in amending the *pro se* petition. *People v. Agee*, No. 128413 (September 28, 2022) (granting petition for leave to appeal from *People v. Agee*, No. 2-20-0748 (Dec. 23, 2021) (unpublished summary order under Rule 23(c))). The parties in that case have not yet completed their briefs in the supreme court.

¶ 84    To be sure, there was no presumption of compliance in *Suarez* because counsel had not filed a certificate. Yet, once our supreme court concluded that the record did not show compliance, it made clear that defendant was entitled to remand *regardless* of the merit of either the *pro se* claim or the new claim in the supplemental petition: "Our Rule 651(c) analysis has been driven, not by whether a particular defendant's claim is potentially meritorious, but by the conviction that where postconviction counsel does not adequately complete the duties mandated by the rule, the limited right to counsel conferred by the Act cannot be fully realized. [Citation.]" 224 Ill. 2d at 51. This is consistent with the principle that "it is improper to affirm the dismissal of a post-conviction petition when this court finds that post-conviction counsel's performance was so deficient that it amounts to virtually no representation at all." *Turner*, 187 Ill. 2d at 415-16 (rejecting State's argument that petitioner needed to demonstrate prejudice).

¶ 85    We further observe that reversing rather than delving into a "prejudice" inquiry of the potential merit of an underlying substantive claim is consistent with a general principle of appellate court competence—that this court should avoid potentially speculative analysis on questions for which the factual record was not adequately developed. See *People v. Veach,* 2017 IL 120649, ¶ 46 (noting that while ineffective assistance of counsel claims must be brought on direct appeal "if apparent on the record," such claims "may sometimes be better suited to collateral proceedings but only when the record is incomplete or inadequate for resolving the claim."). A prejudice analysis as to whether a postconviction claim had merit would hinge on the facts apparent from the record, yet in many instances such analysis could be unduly speculative because postconviction counsel (in failing to provide reasonable assistance) did not ensure the necessary factual development to assess that underlying claim.

¶ 86    In our view, *Suarez* and the cited precedent therein establish that, once it has been determined that counsel did not provide the reasonable assistance required by the Act, remand is required regardless of whether the underlying claims had merit. In this case, we have found that the record—namely, postconviction counsel's assertion of two new arguments without any effort to properly assert them—rebuts the presumption of reasonable assistance. Pursuant to *Suarez*, we need *not* additionally review of the merits of the underlying claims. 224 Ill. 2d at 51-52 ("We have consistently declined the State's invitation to excuse noncompliance with the rule on the basis of harmless error."). Rather, our finding that postconviction counsel failed to render the requisite reasonable assistance is all that is required to warrant reversal.

¶ 87    Finally, we take no issue with the dissent's comments regarding the defendant's argument that postconviction counsel failed to amend or delete the meritless *pro se* contention regarding a non-existent "suppression order." We merely point out that our decision to reverse and remand is not based on that particular argument.

¶ 88    CONCLUSION

¶ 89    In sum, we emphasize that the Act requires a "reasonable" level of representation, regardless of the specific enumerated duties in Rule 651(c). That is, whereas Rule 651(c) may be limited to duties with respect to the initial *pro se* claims, the Act nonetheless generally requires postconviction counsel to exhibit a minimum reasonable level of assistance in representing a petitioner, in all aspects of the representation. Postconviction counsel are not immunized from this standard simply by filling out a generic Rule 651(c) certificate. If postconviction counsel determines there are new arguable claims that should be brought to the court's attention, he or she

must raise them in a reasonable, procedurally correct manner, regardless of whether he or she otherwise complied with Rule 651(c).

¶ 90    Here, the record shows postconviction counsel believed there were two new potentially viable constitutional claims, yet she inexplicably took no action to properly raise them, despite having ample time to do so. We thus conclude that postconviction counsel failed to render the requisite reasonable level of assistance, with respect to both of the new claims that were not brought to the court's attention until argument on the State's motion to dismiss.[10]

¶ 91    Our precedent indicates that, where postconviction counsel did not provide the requisite level of assistance, the proper remedy is reversal and remand for new second-stage proceedings, upon appointment of new postconviction counsel "with leave to amend and add supporting documentation, as he or she deems necessary." *People v. Schlosser*, 2017 IL App 150355, ¶ 32; see also *People v. Kelly*, 2012 IL App (1st) 101521, ¶¶ 40-41 (remanding "for further second-stage proceedings with the appointment of new counsel.")

¶ 92    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand for further second-stage postconviction proceedings with the appointment of new postconviction counsel.

¶ 93    Reversed and remanded.

¶ 94    PRESIDING JUSTICE LAVIN, dissenting:

---

[10] As we reverse on this ground, we need not discuss defendant's argument for reversal premised on postconviction counsel's failure to amend the *pro se* allegation suggesting trial counsel was ineffective with respect to a non-existent "suppression order."

¶ 95    Here, by virtue of postconviction counsel filing a Rule 651(c) certificate, a rebuttable presumption arose that defendant received reasonable assistance. See *People v. Smith*, 2022 IL 126940, ¶ 29. I agree with the majority that even after this filing and notwithstanding the presumption that arises from it, "if postconviction counsel performs unreasonably" a petitioner still may pursue "a claim that counsel failed to provide a reasonable standard of representation." *Id*. ¶ 38; see *supra*, ¶ 51. Nonetheless, it remains a petitioner's burden to overcome the presumption (*People v. Profit*, 2012 IL App (1st) 101307, ¶ 19), and here he "must show not only how the attorney's performance was deficient or unreasonable but also what prejudice resulted from that deficiency" (*People v. Landa*, 2020 IL App (1st) 170851, ¶ 58). Because I do not believe defendant has made such a showing on this record, I respectfully dissent.

¶ 96    First, notwithstanding the parties' characterizations, the record demonstrates that postconviction counsel's argument regarding ineffective assistance of trial counsel was not a new constitutional claim. Rather, it was grounded in the petition, when liberally construed, as is required at the second stage of proceedings. See *People v. Hall*, 217 Ill. 2d 324, 334 (2005).

¶ 97    In his petition, defendant wrote that trial counsel did not satisfy *Strickland* as to the pretrial motion because he did not obtain specific findings on the suppression order. He also alleged appellate counsel was ineffective for not highlighting trial counsel's ineffectiveness in failing "to object to the introduction of statements." Defendant attached the portion of the trial court record wherein his counsel noted he had withdrawn the suppression motion in exchange for the State not using defendant's statement in its case in chief. Additionally, in the petition, defendant alleged that trial counsel provided deficient advice, which forced him to waive his right to testify. At oral arguments on the petition, postconviction counsel asserted that "trial counsel was ineffective for

not proceeding with the motion to suppress statements which prejudiced the petitioner because the failure inhibited him from testifying." Rather than raising a new constitutional claim, I believe counsel was arguing the contents of defendant's postconviction petition. This guts the majority's reasoning that counsel was unreasonable for raising a new claim at oral argument not reflected in defendant's *pro se* postconviction petition.

¶ 98    Second, while postconviction counsel could have amended the petition to more clearly state the ineffective assistance of trial counsel, specifically as to the motion to suppress, I don't think it was unreasonable that she chose not to do so.[11] This is because I don't believe the ineffective assistance claim had any merit on this record. See *People v. Greer*, 212 Ill. 2d 192, 205 (2004) (noting, postconviction counsel need not advance frivolous or spurious claims); *Profit*, 2012 IL App (1st) 101307, ¶¶ 23, 25 (noting, with the 651(c) certificate filed, "the question of whether the *pro se* allegations had merit is crucial to determining whether counsel acted unreasonably by not filing an amended petition."). In order to establish prejudice resulting from defense counsel's failure to file a motion to suppress — or in this case, the withdrawal of the motion — a defendant must show a reasonable probability that (1) the motion to suppress would have been granted and (2) the outcome of the trial would have been different had the evidence been suppressed. *People v. Brickhouse*, 2018 IL App (3d) 150807, ¶ 40.

¶ 99    Here, the proposed motion to suppress prepared by trial counsel asserted that police violated defendant's fourth amendment rights by questioning him after he invoked his right to counsel and to

---

[11] Defendant in his appellate brief relies on several cases wherein the postconviction attorneys failed to amend the petition to include, for example, ineffective assistance of appellate counsel, which is considered a "routine amendment" needed to overcome the procedural bar of waiver. See, *e.g.*, *People v. Milam*, 2012 IL App (1st) 100832, ¶¶ 35-36. I do not believe the amendments defendant's now pointing to are analogous. Here, as set forth, nothing postconviction counsel did or did not do prevented the circuit court from reaching the merits of defendant's petition or directly contributed to the petition's dismissal.

remain silent. According to a handwritten declaration signed by defendant and his attorney, he asserted his right to counsel and to remain silent around 2 p.m. on July 14. Yet, it appears that the day before, around 11 p.m. on July 13, when defendant was arrested and then transferred to the police department, he had *already* made a statement to police that he was at Euclid Park, where he heard the gunshots and saw people running. Thus, the motion focused on statements given following the physical lineup, around 6 p.m. on July 14, wherein defendant acknowledged again being at the park but with two friends and stated that one of them had the gun.

¶ 100   Significantly, even had his 6 p.m. statements been suppressed, I don't think the trial outcome would have been different given that three people identified defendant without any hesitation as the shooter from a physical lineup presented two days after the shooting and, per his statement prior to invoking counsel and silence, defendant admitted being at the park, which was within a half mile of defendant's home.[12] The alibi defense consisted only of defendant's mother vouching for his whereabouts at their home (which she described as "quite a distance" from the park) during the time of the shooting due to a previous court-ordered curfew. See *People v. Mullen*, 313 Ill. App. 3d 718, 729 (2000) (the trier of fact is not required to accept alibi testimony over the positive identification of an accused, particularly where the alibi testimony is from biased witnesses). Her testimony that defendant abided by this curfew was impeached by the State's rebuttal witness who testified to the contrary and also noted that no curfew checks occurred on the night in question. As this court found on direct appeal, the evidence against defendant "was overwhelming." *People v. Smith*, 2012 IL App

---

[12] The victim also identified defendant as the shooter from a photo array that police showed him. Furthermore, the majority points out that, according to appellate counsel, defendant's alibi was undermined insofar as his mother's testimony was impeached by defendant's admissions to being in the park. See *supra*, ¶¶ 55, 62-63. However, had trial counsel proceeded with the motion to suppress, it's quite possible the State would have then used defendant's statement made prior to July 14, at 6 p.m., wherein he admitted to being in the park, for impeachment *and* in the State's case in chief. This would have been more prejudicial.

(1st) 102015-U, ¶ 67. Because I believe the suppression motion would have been futile, there was no point in postconviction counsel amending the petition in that regard.[13] See *Brickhouse*, 2018 IL App (3d) 150807, ¶ 40.

¶ 101    The same can be said for postconviction counsel's argument that defendant, as a 17-year-old, was entitled to a guardian being present at police questioning. The majority finds this argument had no merit, so I don't believe counsel should have been required to amend the petition to include it. See *supra*, ¶ 68, fn 6.

¶ 102    While some would argue that this latter point is a sign counsel provided unreasonable assistance, I think the record in this case is too speculative to draw that conclusion, especially where a postconviction attorney is not obligated to raise additional issues. See *People v. Pendleton*, 223 Ill. 2d 458, 476 (2006). It is not unheard of that an attorney thinking on her feet before the court might add extra flourishes or arguments to persuade the judge. Certainly, I don't think this record alone is sufficient to overcome the presumption established by Rule 651(c) of reasonable assistance. *Cf. Landa*, 2020 IL App (1st) 170851, ¶¶ 59-70; see *Profit*, 2012 IL App (1st) 101307, ¶ 18 (substantial compliance with Rule 651(c) is sufficient).

¶ 103    This same reasoning applies to defendant's contention that his postconviction counsel was unreasonable for failing to amend his *pro se* petition to delete a meritless claim. There is no such statutory or supreme court rule requirement, nor should there be. Given the number of claims some *pro se* petitioners raise, which can include hundreds of pages, requiring postconviction attorneys

---

[13] Defendant also arguably acquiesced to the withdrawal of the suppression motion. When the court notified him prior to trial of the significance of withdrawing the motion — that the State could introduce his statements made to the police about his whereabouts if he or his alibi witness testified —, defendant stated he understood. See *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17 (under the doctrine of invited error, a defendant may not request to proceed in one manner and later contend that the course of action was in error). He can hardly complain of counsel's strategy when he acquiesced to it.

to perform such a task is nonsense. Moreover, it does not aid defendants in presenting their meritorious claims, which is the entire point of Rule 651(c).

¶ 104   For the reasons stated, I therefore dissent.